LEONARD J. CLARK

*v.*

JEFFERSON JACKSON *et al.*

*Opinion filed June 14, 1906.*

1. ABSTRACTS OF TITLE—*when affidavit as to sole heirship is insufficient.* An affidavit in which the affiant states that certain grantors in a deed in the chain of title shown by the abstract were the sole and only heirs of the former owner of the land states a mere conclusion of the affiant and is insufficient, there being no evidentiary facts stated upon which the conclusion is based.

2. SAME—*when affidavit does not show title by limitation.* An affidavit that certain grantors in deeds shown in a chain of title by the abstract were successive, open, continuous and undisputed possessors of the property is insufficient to show title by limitation, in that it fails to show that such possession was hostile or adverse or that it was exclusive or under claim of ownership.

3. SAME—*sufficiency of abstract of title relates to time allowed by the contract.* The sufficiency of an abstract of title, upon a bill for specific performance, is to be determined as of the date fixed by the contract when the party was required to furnish "satisfactory evidence" of title, and not as of the date of the hearing upon the bill after evidence has been received to clear up apparent discrepancies in such abstract.

4. CONFLICT OF LAWS—*foreign courts are presumed to have construed similar statute the same as courts of this State.* In the absence of evidence to the contrary it will be presumed that a statute of a foreign State substantially the same as a statute of this State

has received practically the same construction by the courts of the foreign State as has been given by the courts of this State to the local statute.

5. SPECIFIC PERFORMANCE—*when specific performance should be refused.* Specific performance of a contract for the exchange of properties is properly denied where the complainant has failed to present a proper abstract of title or to make satisfactory arrangements for paying the interest on an encumbrance in accordance with the terms of the contract making the time specified for such purposes of the essence of the contract.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

ROSENTHAL, KURZ & HIRSCHL, for appellant.

HENRY S. SHEDD, and EDWARD A. DICKER, for appellee Jefferson Jackson.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

On March 5, 1903, the appellant, Leonard J. Clark, and the appellee Jefferson Jackson, entered into a contract in writing and under seal, whereby Jackson agreed to convey to Clark a certain apartment building in Chicago, Illinois, and Clark agreed to give Jackson his promissory notes for $70,000, payable in the manner stated in the contract and secured by a mortgage on the apartment building, and to transfer or cause to be transferred to Jackson 4820 shares of the capital stock of the Attica Lithia Springs Company, a corporation of Attica, Indiana, said corporation to be, at the time of the transfer, the owner in fee simple of the property known as the Attica Lithia Springs Hotel, located at Attica, Indiana, including about seven acres of ground, with the improvements thereon, subject only to an encumbrance of $10,000 which Jackson was to assume or guarantee, and Clark further agreed to convey to Jackson all furniture, fixtures and other personal property in and pertaining to said

hotel. The contract expressly provided that all deeds were to be passed and the negotiation to be closed within ten days from the date of the contract, unless more time should be required by reason of defects of title, in which case thirty days from the date of the contract should be allowed for closing the transaction; that time was of the essence, and that "it is hereby further mutually agreed and understood by and between the parties hereto, and as part of the consideration of this agreement, that each party hereto is to provide for the use of the other, within ten days from the date hereof, proper abstracts of title to the property hereby agreed by them to be conveyed or caused to be conveyed, showing good and sufficient title to the same in the grantor herein mentioned."

The contract also provides that Clark shall furnish Jackson satisfactory evidence of the title to the Attica Lithia Springs Hotel property, and that all the interest on the note of the Attica Lithia Springs Company for $10,000, which is the encumbrance above referred to, shall be paid in full by Clark to the date of the contract, thus leaving Jackson to assume the payment of the principal, only.

It seems that Clark had been conducting the hotel in question, and that upon the execution of the contract he surrendered possession thereof to Jackson and took possession of the Chicago property.

Clark furnished Jackson an abstract of the title to the Attica Lithia Springs Hotel realty, but the same was rejected as failing to show such title as the contract required. After some attempts on the part of Clark to remedy the defect, which were deemed abortive by Jackson's attorney, Clark, on April 3, 1903, undertook to make a tender of performance, and a few days afterwards, on April 8, filed a bill for specific performance against Jackson and his wife in the circuit court of Cook county. After Mrs. Jackson had answered the bill denying that the contract was binding upon her for the reason that she did not sign it, the complainant

dismissed the bill as to her. Jackson answered the bill putting in issue the matters discussed in this opinion, and filed a cross-bill praying for an accounting as to the rental value of the Chicago property so far as occupied by Clark, and asking for a decree against Clark for that property and that he be directed to vacate the premises. Clark answered the cross-bill and replications were filed. The cause was thereupon referred to the master in chancery, who reported that a decree of specific performance should be granted; but the chancellor sustained exceptions to the master's report as to the two points herein discussed and dismissed the original bill for want of equity, at the same time granting the relief prayed for in the cross-bill, and Clark appealed.

The chancellor based the decree upon two propositions: That the abstract furnished by Clark to Jackson was not a sufficient compliance with the terms of the contract, and that there was no sufficient offer to pay the interest on the said encumbrance of $10,000, or tender of any definite or certain arrangement for the satisfaction thereof. While it is true that it is the decree which is brought under review by this appeal, and not the reasons upon which the same was based by the chancellor, yet it is proper to consider these reasons first, since they are most important questions, either of them, if decided adversely to Clark, necessitating the dismissal of his bill of complaint.

*First*—The abstract of title to the Attica Lithia Springs Hotel property furnished Jackson by Clark in March, 1903, pursuant to the requirements of the contract, showed title in John Carnagey prior to February 18, 1850, and showed a quit-claim deed of that date for lands including the premises in question, running to John Carnagey, Jr., as grantee, from a number of grantors, bearing the names of Barkley, Stewart, Evans, Higbee and Carnagey, respectively. Henry S. Shedd, Jackson's attorney, examined the abstract, and specified numerous objections thereto, among them, that it did not appear that the grantors in the deed to John Carnagey,

Jr., were the only heirs-at-law of John Carnagey, the grantee in the preceding deed. On March 24 Charles R. Milford, of Attica, Clark's attorney, wrote to H. W. Sisson, who represented the firm of H. O. Stone & Co., of Chicago, through whom Clark was endeavoring to perfect arrangements to enable him to comply with the contract, and stated, concerning the break in the title in question, that he could not show this matter satisfactorily; that he believed he could clear it up in part, but perhaps not entirely to the satisfaction of the attorneys; that a suit to quiet title might be necessary; that he had a man hunting up a person whom he thought to be a Carnagey heir, and that he might be able, if he found the man, to fix this matter to the satisfaction of Jackson's attorneys, and that he was very much surprised to find the title in this condition. Afterwards an affidavit of Homer Sewell, made on March 25, was offered as connecting the two conveyances by showing heirship, but the affidavit expressly disavowed personal knowledge of the facts by the affiant and the same was rejected by Jackson's attorney. Afterwards another affidavit was presented, made by Gilbert Carnagey, a man seventy-five years of age, who signed his name with a cross and claimed he was one of the heirs of John Carnagey, and who stated in his affidavit that certain grantors in the deed to John Carnagey, Jr., were the sole and only heirs-at-law of John Carnagey, deceased. This affidavit, which was presented on April 3, was also rejected as insufficient. There was some conversation concerning a bill to quiet title and the extension of the time for the performance of the contract in order that the title might be quieted, Jackson's attorney saying that he had no authority in the premises but would speak to Jackson on the subject. Afterwards, and on the same day, Clark made a tender of certain papers intended to show an offer to perform the contract on his part. The time for the performance of the contract expired on April 4 and the bill of complaint in this cause was filed on April 8.

222—2

There can be no doubt that the abstract furnished by Clark to Jackson, as first presented, without any proof that the persons who conveyed as the heirs of John Carnagey were in fact his only heirs, did not show satisfactory title to the Attica Lithia Springs Hotel property. The question whether any defect in an abstract can be cured by affidavits does not arise in this case, as the contract did not require that an abstract of the title to the Attica Lithia Springs Hotel realty should be furnished. The provision in reference to showing that title was, that Clark should furnish "satisfactory evidence" of the title, and Clark elected so to do by furnishing an abstract and affidavits. The defect in the abstract occasioned by its failure to show who were the heirs of John Carnagey was not cured by the affidavit of Homer Sewell, which was made on information and belief and without personal knowledge of the facts. Neither was the affidavit of Gilbert Carnagey sufficient, for the reason that he swears to a conclusion, and not to the facts, as to the heirs of John Carnagey. If under this contract it could properly be shown by affidavits attached to the abstract that certain persons, grantors in one deed, are the sole and only heirs-at-law of a preceding grantee in a chain of title, such affidavits should set forth the facts with the same certainty and precision with which such facts must be proved in court in a contest over the title. The affidavits presented with this abstract were *ex parte* statements, and those making them were not subjected to cross-examination, and hence the statements therein contained should have left nothing to conjecture.

As against objection, a witness would not be permitted to testify in a court of justice that certain persons are the heirs of a deceased person, but would be required to state who are the children of the decedent and whether or not any of his children are dead, and, if so, when they died, and whether or not there are living children of such deceased children, and so on, until all material facts should be thus

developed, and the court would be in a position to determine whether or not the persons in question are the sole and only heirs-at-law of the decedent.    3 Elliott on Evidence, sec. 2193; 4 Ency. of Evidence, pp. 576, 577, and notes; *Skinner* v. *Fulton,* 39 Ill. 484; 2 Greenleaf on Evidence, sec. 354.

In 3 Elliott on Evidence (sec. 2193) it is said: "In proof of heirship, as in other cases, it is not competent for witnesses to state conclusions.   It is not within the province of the witness to state that the claimant is an heir of a certain decedent, but he may state the relationship of the parties. According to Mr. Greenleaf it is necessary to establish two propositions: (1) The relationship of the claimant through a common ancestry; (2) that there are no descendants from the same ancestry who are entitled to share in the estate.   It is not sufficient to prove that the claimants are the children and heirs of the decedent, nor is it sufficient to prove that they are the only children who survive the ancestor.   It would only be sufficient to prove that the claimants were the only children that the ancestor ever had, or that if he had other children they had died leaving no children or husbands or wives, and upon such proof the law would declare these claimants to be the only heirs."

The danger of accepting the conclusion of an affiant in such case may be readily illustrated from the record before us.   Gilbert Carnagey, who made the affidavit, was at the time seventy-five years of age, of a morose disposition, difficult of approach, especially by strangers, and unable to write his own name.   He might have known much or little concerning the Indiana law of descent, but it is probable that his information on this subject was by no means complete.   He testified before the master in chancery within less than two years after making the affidavit, and counsel for appellant, in answering the statement that sundry depositions were needed on the trial itself to show the heirship, state that there was a long interval between the times when Gilbert Carnagey made his affidavit and gave his deposition, and

then add: "It may well be that at the latter time this aged man's memory of details (or of mere evidentiary facts) was such that corroborative depositions were deemed advisable." This is the very reason why the statement of the ultimate fact or conclusion by an affiant or witness is not permitted. If the witness is not able to state the evidentiary facts he is certainly disqualified from stating the conclusion. And lest he may not be able to draw the proper conclusion, the law will not permit him to draw it at all, but will require him to state the evidentiary facts, and leave it for the court, learned in the law, to draw the conclusion.

Appellant's counsel cite *Physio-Medical College of Indiana* v. *Wilkinson,* 108 Ind. 314, to the effect that the averment that plaintiffs are the only heirs of an intestate is not the statement of a conclusion of law, but is "equivalent to a statement of the fact that the appellees stood in such relation of kinship to Margaret Wilkinson as that, at her death, the law of descent cast her estate upon them." But this decision relates to the sufficiency of the complaint after verdict and upon assignment of error in the Supreme Court, and not to the question under consideration in this case. The *Wilkinson case* was tried by jury and a judgment was rendered upon the verdict. It was assigned for error in the Supreme Court that the complaint did not state sufficient facts to constitute a cause of action. Undoubtedly the allegation that the plaintiffs were the only heirs was good after verdict. The Supreme Court, in passing upon the question, says: "If the appellant had deemed it important that the degree of consanguinity or affinity relatively occupied by the deceased and the plaintiffs should appear more in detail, a motion to make the complaint more specific might with propriety have been entertained." The *Wilkinson case* is not in conflict with the views expressed in this opinion.

But it is urged that the insufficiency of the Carnagey affidavit in this respect was waived or that Jackson is in some way estopped to insist upon this point. H. W. Sisson

testified that Henry S. Shedd, Jackson's attorney, said to Charles R. Milford, Clark's attorney, when the Sewell affidavit was presented, that he did not think it was competent, as it was not sworn to by the affiant as of his own knowledge. Milford testified to the same effect. On the other hand, Shedd testified that he told Sisson, after examining the Sewell affidavit, that he would not accept it, and that he did not believe an affidavit would cure the objection but was of the opinion that a proceeding to quiet the title would be necessary. Shedd further testified as follows: That when Sisson and Milford called on the next day he told them that the Sewell affidavit was wholly insufficient,—that it did not show personal knowledge of the facts and that he would not accept that affidavit; that Milford thereupon said that there was a grandson of John Carnagey in the country some distance from Attica, who was a hermit, and of morose disposition and difficult of approach by strangers, for which reasons he thought he would be unable to get this man's affidavit; that he (Shedd) stated that a suit to quiet the title would be the only thing that would meet the requirements; that Milford did not say that he would endeavor to get another affidavit; that he (Shedd) having noticed the name of another than Carnagey in the Sewell affidavit, asked Milford who this person was, and that Milford said he understood him to be an illegitimate child; that he (Shedd) then said that there must be some irregularities in the family, to which Milford answered that there were, apparently; and that he (Shedd) then said that that was a further reason why the family history should be gone into very thoroughly with reference to the heirship. This conversation with reference to the illegitimate child is not denied either by Sisson or Milford. The evidence shows that Milford himself had written to Sisson, before either affidavit was furnished, that he feared he would not be able to clear up entirely the facts as to the Carnagey heirs, and that it might be that a suit to

quiet title would be the only way in which the matter could be adjusted.

It is manifest from these and other facts appearing in the record that Shedd was objecting to the affidavits throughout these conversations and insisting that a proceeding to quiet title would be necessary. His statement that the illegitimacy of one of the children was a further reason why the family history should be gone into very thoroughly with reference to the heirship clearly indicates an intention to insist upon something more than the mere statement of a conclusion as to the heirship in any affidavit which might be furnished. We are of the opinion that Jackson was not bound to accept the affidavit of Gilbert Carnagey as presented, and was not estopped to rely upon its insufficiency in the particular above indicated.

Among the papers tendered with the abstract of title by Clark to Jackson on April 3 was an affidavit of Charles R. Milford made on April 3, 1903, as to the question of possession, evidently intended to strengthen the title by invoking the Statute of Limitations. The language of Milford's affidavit was as follows: That Erastus, G. Bond, the grantee in No. 7 of the abstract, "and after him, successively, Mary Bond, Estella Picken, Richard Picken, Charles C. Bond, Olive O. Bond, Elbert Bond and Leotie Bond, Rebecca A. Holmes, Alexander Holmes, were to my personal knowledge, up to the present time, in open, continuous and undisturbed possession of said portion of said land which is now known as the hotel property of the Attica Lithia Springs Company; said company in 1900 built its hotel and sanitarium on its said land, and then took and ever since has been and now is in actual possession thereof." Is this affidavit sufficient to show title by limitation?

The statutes of Indiana in evidence provide that an action for the recovery of the possession of real estate shall be commenced within twenty years after the cause of action has accrued, and not afterwards. So far as the questions in-

volved in this case are concerned, the statutes of Indiana are not materially different from the statutes of Illinois on the same subject, and it will not be presumed, in the absence of evidence, that the construction of these statutes by the Supreme Courts of the two States is materially variant.

To establish a title by limitation in this State by twenty years possession, mere possession is not sufficient, but the possession must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under claim of ownership. (*Illinois Central Railroad Co.* v. *Hatter,* 207 Ill. 88.) "All these elements must be made out by clear and positive proof." *Roby* v. *Calumet and Chicago Canal and Dock Co.* 211 Ill. 173.

Among the extracts from the opinions of the Supreme Court of Indiana introduced in evidence by counsel for the appellant is the following: "Adverse possession under claim and color of right gave him a complete and perfect title." Evidently the law of Indiana as to what constitutes adverse possession is not different from the general law on that subject, which is correctly expressed in five specifications in the decision of this court above cited. The commencement of such title is a disseizin, producing a change by which the estate is taken from the rightful owner and placed in the wrongdoer, and the possession so taken by the disseizor must be hostile or adverse in its character, importing a denial of the owner's title in the property claimed; otherwise, however open, notorious, constant and long continued the possession may be, the owner's action will not be barred. (1 Cyc. 1026.) Claim of title or right by the occupant is in all cases necessary. *Maple* v. *Stevenson,* 122 Ind. 368; *Parish* v. *Kaspare,* 109 id. 586; *Pennington* v. *Flock,* 92 id. 378.

An examination of Milford's affidavit in the light of these authorities shows the same to be wholly insufficient to establish title by limitation. The affidavit fails to show that the possession of the persons therein named was hostile or adverse, or that the same was exclusive, or that the same was

under claim of ownership. The affidavit states that certain persons were successively in possession of the premises, and yet, manifestly, if the abstract is to be considered, some of these persons must have been in possession thereof jointly, and not successively. The affidavit states that certain persons were in possession of the premises "up to the present time,"—that is, up to April 3, 1903, the date of the affidavit; and yet the affidavit afterwards states that the Attica Lithia Springs Company,—not one of those before mentioned,— built its hotel and sanitarium on the land in 1900 and then took possession of the land, and ever since that time has been in the actual possession thereof. Here is a contradiction in the terms of the affidavit indicating carelessness in its preparation, to say the least. Under this affidavit, the possession of the Attica Lithia Springs Company, covering a period of three years, has no element of adverse possession except that of mere possession, which is clearly insufficient.

The facts stated in this affidavit, if presented in court in a contest over the title, would not be sufficient, standing alone or in connection with the abstract, to show title by limitation, and Jackson was not bound to accept the abstract, and the affidavits therewith tendered, as showing good and sufficient title. In this view of the matter it is unnecessary to decide whether affidavits attached to an abstract showing title by limitation, if clearly sufficient for that purpose, would satisfy the requirements of the contract in question under the laws of Indiana.

It is urged, however, that the Carnagey link is sufficiently shown by the abstract without any affidavit whatever. The argument in this connection is, that after fifty-three years of undisturbed possession of the land under the chain of title shown by the abstract, it is to be presumed that all of the heirs of John Carnagey joined in the conveyance of the premises. Manifestly, any evidence taken on the hearing nearly two years after April 4, 1903, cannot be treated as part of the abstract which was furnished and tendered

before that date. The right of the appellant to maintain this bill for specific performance depends upon the abstract and affidavits furnished during the thirty days allowed for performance under the contract. Jackson was not required to act upon the presumption in question, even if such presumption arose, for it would not be conclusive, but subject to be overcome by evidence that the facts were otherwise.

*Second*—There is another reason why the specific performance of the contract should be denied. The interest on the encumbrance of $10,000 on the Attica Lithia Springs Hotel property, amounting to about $800 at the date of the contract, was to be paid by the appellant or satisfied by him in some sufficient manner, so that the same would not stand as a lien against the premises. Appellant evidently undertook to make arrangements for the payment of the interest through H. O. Stone & Co., the same to be taken out of the rent of the apartment building. But there was not sufficient definiteness as to this arrangement at the time of the tender on April 3 to amount to a compliance with this requirement of the contract. *Skeen* v. *Patterson,* 180 Ill. 289.

Many other questions are presented by this record, among them the foreclosure of the encumbrance on the Attica Lithia Springs Hotel property occurring since the commencement of this suit; but such questions need not be considered, inasmuch as the points already passed upon are decisive of the issues.

There is no merit in the claim that the contract was executed by the actual exchange of the possession of the premises involved, for the evidence shows that such exchange of possession as did in fact take place was temporary and subject to the consummation of the contract.

The decree of the circuit court dismissing the original bill for want of equity and granting the relief prayed for in the cross-bill is justified under this record, and such decree is therefore affirmed.　　　*Decree affirmed.*