**L. S. Vognild, for use of A. Wallin, Defendant in Error, v. Fredericke Voltz et al., Plaintiffs in Error.**

### Gen. No. 13,847.

CONTRACTS—*what performance of obligation to furnish merchantable title.* A contract to convey "a good and merchantable title" to real estate is performed by the conveyance of a title free from legal objection other than an objection with respect to the chain of title failing to show that certain grantors were the heirs of a deceased owner, such objection however being met by satisfactory proof by affidavit and an incidental judicial finding of the fact of heirship.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. THOMAS B. LANTRY, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed April 30, 1908.

**Statement by the Court.** L. S. Vognild, July 13, 1906, entered into a written contract with Fredericke Voltz, Katie Voltz, Catherine Cabel and Louis Cabel, for the purchase by said Vognild from them of the premises hereinafter described in the affidavit of Max Froehlich, for the sum of $16,750. L. S. Vognild brought suit to recover $500 paid by him as earnest money on the contract, on the ground that the title was defective. The cause was tried by the court, without a jury, and the court found for the plaintiff, assessed his damages at $500, and rendered judgment accordingly. The cause was tried on the following stipulation of facts:

"It is hereby stipulated by and between the parties hereto that the following are the facts involved in the above entitled cause:

Defendants contracted with the plaintiff to sell him certain real estate in Cook county, Illinois, as will appear by the contract hereto attached, marked Exhibit 'A.' Upon examination of the title to said real estate as shown by an abstract of title, plaintiff's attorney made certain objections to the title, as will appear by his opinion hereto attached as Exhibit 'B.' Of said objections he stated to the attorneys for the defendants that he insisted on objection No. 3, and that if said objection were cured he would waive the others. Said objection is as follows:

'Between No. 22 and No. 26, original abstract, there is a complete break in the chain of title. By No. 22 Truman G. Wright conveys the title to Charles S. Wright, under deed dated August 14, 1854, and by No. 26, Salmon F. Heath and Julia W. Heath, the said 'Julia W. Heath being the sole heir at law of Charles S. Wright, deceased,' and Truman G. Wright and wife assume to convey the title to David S. Lee. Charles S. Wright's estate was neither probated in

Cook County, Illinois, nor an exemplification of it filed in the recorder's office of said Cook county.  An attempt is made to clear the objection by the affidavit of Truman G. Wright, recorded April 10, 1873, which states conclusions rather than evidentiary facts from which conclusions may be gathered.'

The affidavit of Truman G. Wright, recorded April 10, 1873, referred to above, as well as the affidavit of James R. Doolittle, recorded at the same time, appear in the abstract, and are as follows:

'STATE OF WISCONSIN, } ss.
    Racine County.

Truman G. Wright, of Racine City, in said county, being first duly sworn, doth depose and say that he is the same person who November 4, 1837, with Julia Ann, his wife, mortgaged the west half of the northeast quarter of Section 6, Township 39 north, Range 14, in Chicago, Cook county, Illinois, to Charles S. Wright of Bennington, Vermont, and afterwards by deed dated August 15, 1854, conveyed said land to said Charles S. Wright.

Deponent says that said Charles S. Wright was a brother of this deponent, and this deponent was very intimate with him and his family; that said Charles S. Wright died in the year 1855 at Racine, Wisconsin, intestate, leaving him surviving no wife, but one child, viz.: Julia W. Heath, wife of Salmon F. Heath, now residing at St. Joseph, Michigan, and that said Julia W. Heath was the only heir at law of said Charles S. Wright.

                                    TRUMAN G. WRIGHT.

    Duly sworn to.'

'STATE OF ILLINOIS, } ss.
    County of Cook.

James R. Doolittle of Racine, Wisconsin, being duly sworn, says that he has read the foregoing affidavit of Truman G. Wright, and that the matters therein stated are true to the best of his knowledge and belief.

And he further says that he has lived at Racine, Wisconsin, from May, 1851, till the present time; that he knew Charles S. Wright intimately until his death in 1855; that deponent was his counsel in business, and was intimately acquainted with Salmon F. Heath and well acquainted with his wife, Julia W. Heath; that after the death of said Charles S. Wright this deponent was appointed his administrator; that he died intestate; that deponent as such administrator settled the estate of Charles S. Wright; that from his knowledge thus acquired as the friend and counsel of said Charles S. Wright, in his lifetime and as his administrator after his death, he states that said Charles S. Wright died in 1855, leaving no widow, and that he left only one heir at law, viz.: Julia W. Heath, wife of Salmon F. Heath, having no other child or children to the knowledge of this affiant.

JAMES R. DOOLITTLE.'

Duly sworn to.

The defendants insisted that the abstract, as hereinabove shown, exhibited the proper chain of title, but in addition thereto they submitted to the plaintiff and his attorney, within the sixty days allowed by the contract, the following documents to correct whatever defect there might be in such title:

A letter from the county judge of Racine, Wisconsin, to the defendants' attorneys, in answer to a request for a certified copy of the order of heirship, as follows:

'RACINE, WIS., September 22, 1906.

GOLDZIER, RODGERS & FROEHLICH,
                Chicago, Ill.

DEAR SIRS:—In reply to your of the 20th inst. directed to the Reg. in Probate, I beg leave to say that I have very carefully examined all of the papers in the Charles Wright estate and find no finding of heirship. I wish to call your attention to the fact that the records of this office were destroyed in the fire which burned our court house in 1861, and that this

Vognild v. Voltz.

is a "restored record," which may account for the absence of the heirship finding. I am,

Respectfully,

MAX W. BECK,
County Judge.'

An exemplified copy (duly certified in accordance with the law of the United States, with reference to the records of one state being admissible in those of another) of a final order allowing the final account in the matter of the estate of Charles S. Wright, deceased, entered in the County Court, in Probate of Racine county, Wisconsin, said order being as follows:

'RACINE COUNTY COURT |
    In Probate         }

In the Matter of the Estate of |
CHARLES S. WRIGHT, dec'd.   }

At a term of the County Court of Racine county held at the office of the judge thereof in the City of Racine, said county, on the first Tuesday in November, A. D. 1861.

W. E. WORDING,
    Judge.

On the seventh day of November, 1861, in the November term of the County Court of Racine appears before this court Julia W. Heath, Salmon F. Heath and Truman G. Wright, all of whom claim to be interested in the estate of said Charles S. Wright, deceased, and also James R. Doolittle, administrator of the said estate, the said day being the day appointed by this court for the examination of the account of the said administrator, and the same being adjourned from day to day until the twentieth day of November, 1861, and on the said last named day the said account being presented and the said Julia W. Heath, Salmon F. Heath being present, also Truman G. Wright, and making no objections to said account, and it appearing also to the judge of this court that the said Julia W. Heath is the only heir of the said Charles S. Wright,

deceased, and the said account being duly examined and found to be correct, it is ordered that the sum of $2,600 be and the same is hereby allowed to the said James R. Doolittle, administrator, as compensation in full for his services in settling said estate, including his commission for collecting proceeds due said estate and his per diem fees and also extra compensation on account of unusual difficulties and responsibility in settling said estate.

Dated November 20, 1861.

W. E. WORDING,
County Judge.'

An affidavit of Max Froehlich, with reference to the possession of said premises, as follows:

'STATE OF ILLINOIS,  } ss.
   County of Cook.  }

Max Froehlich, being first duly sworn, on oath says that he is and has been a resident of the city of Chicago, in said county, since 1854; that he was intimately acquainted with one John Buehler, who died in 1899, and his family, the said John Buehler having acquired title by deed from Orrin W. Potter and wife, dated March 1, 1872, and recorded April 9, 1872, in Book 48, page 487, to the property located in said county and described as lots one to fourteen inclusive in block one of David S. Lee's Addition to the Original Town of Chicago; that lots forty-seven and forty-eight of block one in said David S. Lee's Addition adjoin the first named premises to the west, being separated only by an alley, and were acquired by special warranty deed from Orrin W. Potter to John Buehler, dated November 22, 1880, and recorded December 28, 1880; that affiant was employed in a confidential capacity in the business of John Buehler in Chicago from May, 1873, until the latter's death in May, 1899; that affiant resided in the immediate vicinity of said premises, to-wit, within one-fourth to one-half mile of said premises, from 1882 to 1903; that this affiant

was well acquainted with all the aforementioned premises and with their occupants from the time of their respective purchases by said John Buehler to the present day; that such acquaintance was gained by reason of affiant's sight of said premises during his residence in said neighborhood from several times daily to once a week, as well as affiant's knowledge gained by keeping the private business and personal books of said John Buehler during his lifetime, and those of his widow after his death.

Affiant further states that from the time of their respective purchases all the said premises were used by the said John Buehler as a homestead, he actually residing thereon with his family and being in possession thereof; that later at different times portions of said premises were sold by the said John Buehler to various purchasers, whereupon said John Buehler relinquished possession of such respective portions as were sold and continued to reside on the remainder; and at the time of his death in 1899 he was in actual possession as his homestead of such of said premises described as follows; having continued therein without interruption under claim of ownership, such possession having further been hostile, adverse, visible, notorious and exclusive, to wit: Lots six (6), seven (7), eight (8), nine (9), ten (10), eleven (11), twelve (12), thirteen (13) and fourteen (14), the south 30 feet of lot forty-eight (48) and the east 2.75 of the south 30 feet of lot forty-seven (47), all in block one (1) in David S. Lee's Addition to Chicago, excepting those parts of said lots 6, 7, 8, 9 and 10 conveyed to the Metropolitan West Side Elevated Railroad Company by deed recorded May 22, 1894, as Document No. 2,056,226 in book 4849, page 25, and also excepting those parts of lots 6 and 7 conveyed to Oscar A. Lewis by deed recorded February 9, 1895, as Document No. 2,171,930, in book 4997, page 480, in section six (6), township thirty-nine (39) north, range fourteen (14) east of the Third principal meridian,

situated in the city of Chicago, County of Cook and State of Illinois.

Affiant further states that in and by his last will and testament, which was duly probated, the said John Buehler devised his said homestead to his widow, Rosa Buehler, who continued to reside in the same as her homestead until her death in December, 1902; that in and by her last will and testament, which was duly probated, she devised her said homestead to her sisters, Fredericke Voltz, Catherine Cabel, and her niece, Katie Voltz, in common; that since the death of said Rosa Buehler her said devisees have been in possession of the said premises by and through their agents or tenants, and that they are at the present time so in possession.

Affiant further says that since the purchase of said premises by said John Buehler, the same have been in actual possession of and the taxes thereon have been paid by the following persons in succession: John Buehler, Rosa Buehler and Fredericke Voltz, Catherine Cabel and Katie Voltz, as tenants in common; that such possession was at all times exclusive, without interruption, under claim of ownership, hostile, adverse, visible and notorious.

Duly sworn to.                    MAX FROEHLICH'.

The written contract between the parties was for the conveyance of the premises mentioned in the affidavit of Max Froehlich as being in the possession of these defendants; said contract containing the provision that the defendants were to convey a 'good and merchantable title thereto'; and that 'in case material defects be found in said title, and so reported, then if such defects be not cured within sixty days after such notice thereof, this contract shall, at the purchaser's option, become absolutely null and void, and said earnest money shall be returned; notice of such election to be given to the vendor'; and that 'should said purchaser fail to perform this contract promptly on his part, at the time and in the manner herein

specified, the earnest money paid as above shall, at the option of the vendor, be retained by the vendor as liquidated damages, and this contract shall thereupon become null and void. Time is of the essence of this contract, and of all the conditions hereof.'"

The vendors also agreed to furnish, except as to lots 47 and 48, a complete merchantable abstract of title, or merchantable title guaranty policy.

"Said plaintiff insisted that the abstract of title does not properly show a good and merchantable title in the defendants, and demanded the return of his earnest money, five hundred dollars, which had been paid said defendants. The defendants insisted that the papers and documents submitted by them to the plaintiff, as heretofore set forth, completely corrected any defect which may have existed to the title, and they having duly made tender of deeds, and the plaintiff having refused to pay the balance due, the defendants elected to and did declare the earnest money forfeited, and so notified the plaintiff. The defendants further notified the plaintiff that the proper officers of the Chicago Title & Trust Company stated, after having the facts stated to them, that they would issue a guarantee policy on the title at any time the plaintiff might desire one.

This suit is brought to recover that amount, and the question of title heretofore set forth is the only one involved in the suit.

BOWERSOCK & STILWELL,

Attorneys for Plaintiff.

GOLDZIER, RODGERS & FROEHLICH,

Attorneys for Defendants."

GOLDZIER, RODGERS & FROEHLICH, for plaintiffs in error.

BOWERSOCK & STILWELL, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

It appears from the stipulation between the attor-

neys for the respective parties that the plaintiff's attorney made certain objections to the title, but stated to the attorneys for the defendants "that he insisted on objection 3, and that if said objection were cured he would waive the others." An abstract of title was furnished to the plaintiff by the defendants and examined by plaintiff's attorney. His objection numbered 3 is as follows:

"Between No. 22 and No. 26, original abstract, there is a complete break in the chain of title. By No. 22 Truman G. Wright conveys the title to Charles S. Wright, under deed, dated August 14, 1854, and by No. 26, Salmon F. Heath and Julia W. Heath, the said 'Julia W. Heath being the sole heir at law of Charles S. Wright, deceased', and Truman G. Wright and wife assume to convey the title to David S. Lee. Charles S. Wright's estate was neither probated in Cook County, Illinois, nor an exemplification of it filed in the recorder's office of said Cook County. An attempt is made to clear the objection by the affidavit of Truman G. Wright, recorded April 10, 1873, which states conclusions rather than evidentiary facts from which conclusions may be gathered."

Counsel for plaintiff, defendant in error here, claim that the statements in Truman G. Wright's affidavit that he was very intimate with Charles S. Wright and his family; that Charles S. Wright was his brother and died in 1855 at Racine, Wisconsin, intestate, leaving no widow and but one child, viz., Julia W. Heath, wife of Salmon F. Heath, now residing at St. Joseph, Michigan; and that Julia W. Heath was the only heir at law of said Charles S. Wright, are all conclusions. We cannot concur in this view. The statements, with the exception of the statement that Julia W. Heath was the only heir at law of Charles S. Wright, are statements of fact, which would be admissible between the parties in a suit at law. They are evidentiary facts. Objection number 3 contains no objection or reference to the affidavit of James R. Doolittle, in which the affiant states that Charles S. Wright died

in 1855, leaving no widow and that he left only one heir at law, viz.: Julia W. Heath, wife of Salmon F. Heath, "leaving no other child or children, to the knowledge of this affiant."

It does not appear from the affidavit of Wright or Doolittle that Charles S. Wright had not other children, who may have died during their father's lifetime, leaving heirs; but the order of the County Court of Racine county, Wisconsin, of November 7, 1861, contains the following: "And the said Julia W. Heath, Salmon F. Heath being present, also Truman G. Wright, and making no objections to said account, and it appearing also to the judge of this court that the said Julia W. Heath is the only legal heir of the said Charles S. Wright, deceased," etc. It is contended by counsel for the plaintiff that the duty of the County Court being, as appears from the order, to examine into and pass on the account of the administrator of the estate of Charles S. Wright, deceased, the question of heirship was not before the court, and therefore the statement in the order that Julia W. Heath was the only legal heir of Charles S. Wright, deceased, was *obiter dictum* and cannot be regarded as a judicial finding of heirship. It is fully shown by the affidavits of Truman G. Wright and James R. Doolittle that Julia W. Heath was the surviving child of Charles S. Wright, deceased. The heirs of Charles S. Wright were interested in the estate of the deceased, and were entitled to be present when the administrator's account was presented for examination and approval, and it was the court's duty to see either that they were present in court, or that they had been properly notified and failed to appear. And, in order that the heirs should be bound by the order, it was necessary that it should appear in it, either that the heirs were in court, or had been notified and failed to appear. Therefore, the finding that Julia W. Heath, who was in court, as appears from the order, was the only

heir of Charles S. Wright, deceased, was not a mere
*dictum,* but was a judicial finding of the fact of heir-
ship.

No objection is made as to the parts of lots 47
and 48 described in the contract and in Max Froeh-
lich's affidavit. Objection 3 relates to the other lots
described in said affidavit. The lots in question, other
than lots 47 and 48, are lots 6 to 14, both inclusive,
in block 1, in David S. Lee's Addition to Chicago.
Max Froehlich, in his affidavit, deposes that he was
intimately acquainted with John Buehler and his
family, and that said Buehler acquired title by deed
of date March 1, 1872, and recorded April 9, 1872,
from Orrin W. Potter and wife to said John Buehler,
to lots 1 to 14, inclusive, in block 1, in David S. Lee's
Addition to Chicago, and that said premises, from the
time of said purchase, were used by said Buehler as a
homestead; that he and his family actually resided
thereon, and he was in actual possession of the same;
that later he, at different times, sold portions thereof,
but continued to reside on the remainder; that he died
in 1899, and at the time of his death he was in actual
possession of lots 6, 7, 8, 9, 10, 11, 12, 13 and 14,
etc., having continued such possession under claim of
ownership his possession having been hostile, adverse,
visible, notorious and exclusive; that he devised his
said homestead to Rosa Buehler, his widow, and she
continued to reside on the same till her death in
December, 1902, when by her last will she devised
the same to Fredericke Voltz and Catherine Cabel,
her sisters, and Katie Voltz, her niece, in common,
and since the death of Rosa Buehler her said devisees
have been in possession of the same, by their agents
and tenants, and are now in possession thereof, and
that the taxes have been paid on said premises by
John Buehler, Rosa Buehler and said devisees in suc-
cession. This affidavit shows continuous and exclusive
possession for more than twenty years in John Bueh-
ler, his widow and her devisees, under claim of own-

ership, and the payment of the taxes on the property during such possession. No objection is made to the affidavit by objection 3, and the only objections to it made in argument are that the Statute of Limitations does not run against minors, insane persons and others laboring under disabilities, and there may be such persons, and that such continuance in possession is not a matter of record, and that plaintiff is entitled to a record title. In support of the proposition that plaintiff is, by the contract, entitled to a record title, Page v. Greeley, 75 Ill. 400, and Parker v. Porter, 11 Ill. App. 602, are cited. In the latter case the contract provided for "the delivery by defendant of a warranty deed and abstract of title, brought down by the recorder's office to date, showing good title." In Page v. Greeley the contract provided: "The said parties shall respectively furnish, each to the other, abstracts of title, made by competent abstract makers, to the premises herein agreed to be sold," etc. The court construed this provision as a contract for a good title of record. The contract of the defendants here is "to convey to said purchaser a good and merchantable title thereto, by general warranty deed, with release of dower and homestead rights, subject to existing leases by month." The contract here is to furnish a merchantable abstract of title.

McDuffee v. Sinnott et al., 119 Ill. 445, was a suit for partition between the heirs of John Sennott, deceased. The deceased and his heirs had been in actual and exclusive possession of the premises for more than twenty years. Some of the parties to the partition suit claimed as heirs of one Henry Jackson; but the court held that at the time of the commencement of the suit the Jackson title was barred, both by the twenty and seven years' limitation. The court say: "The only answer made to this position is that limitation acts can only be availed as a shield, and not as a sword, and a number of authorities are referred to as sustaining this position. In view of the repeated

decisions of this court, it would be a fruitless consumption of time to enter upon a discussion of the cases decided outside of this state, for whatever the rule may be elsewhere, it is now well settled in this state that whenever the bar of the statute has become absolute, and the party entitled is in possession under it, it is thereafter just as available for attacking as for defensive purposes, and its availability in this respect will not depend at all upon the occupant continuing in the actual possession of the property. His rights in that respect are precisely the same as those of any other absolute owner of land. He can vacate it or occupy it, just as convenience or interest may dictate." Citing numerous cases.

In Riverside Co. v. Townshend, 120 Ill. 9-20, the court say: "Where the plaintiff in ejectment shows an adverse possession for twenty years, so that the right of entry is barred, he is entitled to recover even against a defendant whose possession for a less period is lawful," citing authorities. The cases cited are a complete answer to the plaintiff's contention that a good title means, necessarily, a record title.

Clark v. Jackson, 222 Ill. 13, is relied on by plaintiff's counsel, and, as appears from the record, influenced the decision of the trial court. That case is not an authority for the proposition that affidavits cannot be used in support of the title, the court expressly saying: "The question whether any defect in an abstract can be cured by affidavits does not arise in this case, as the contract did not require that an abstract of the title to the Attica Lithia Springs realty should be furnished."

When title is sought to be established under the twenty-year Statute of Limitation, we cannot perceive how it can be proved otherwise than by parol evidence.

We are of opinion that the evidence cures objection 3 of plaintiff's counsel. This renders it unnecessary, in view of the stipulation between the parties, to con-

sider other objections urged in the opinion of plaintiff's counsel on the title. Counsel for plaintiff say, in their argument: "The objection No. 3 not being cured to the satisfaction of the vendee, then the vendee insists upon the other objections enumerated in the opinion of title." The stipulation does not require that objection 3 shall be cured to the satisfaction of the vendee, which, as counsel for defendants pertinently suggest, might be impossible. The language of the stipulation is: "Of said objections he stated to the attorneys for the defendants that he insisted on objection No. 3, and that if said objection were cured, he would waive the others." This warranted the attorneys for the defendants to confine their defense to objection No. 3, and to hold that they were required to produce evidence curing the objection to the satisfaction of the plaintiff, would make the stipulation a mere trap.

The judgment will be reversed.

*Reversed.*