(No. 15385.—Decree affirmed.)
J. C. EWING, Appellant, *vs.* P. M. PLUMMER, Appellee.

*Opinion filed June 20, 1923.*

1. DEEDS—*what constitutes a valid objection to title.* Where an abstract shows no conveyance by the last grantee in the regular chain of title from the United States and the next entry is a warranty deed from an entirely different person a purchaser is justified in rejecting the title of the vendor; and evidence of adverse possession of the vendor and his predecessors for the statutory period will not cure the defect, where nothing is shown to bar the rights of heirs who may have been under legal disability.

2. SAME—*when a title is merchantable.* A title, to be merchantable, need not necessarily be perfect of record, but a purchaser has a right to require that the title shall be of such a character that he will not be exposed to danger of litigation as to its validity, and if the facts throw a cloud on the title, rendering it dubious in the minds of reasonable men, it is not merchantable.

3. SAME—*when facts not of record may be shown by affidavits to make title merchantable.* It is proper, under some circumstances, to supply by affidavits in an abstract of title the facts which do not ordinarily appear or cannot appear of record, but the affidavits should set forth the facts with the same certainty and precision with which such facts must be proved in court in a contest of title.

4. SPECIFIC PERFORMANCE—*vendee cannot be compelled to accept title quieted by a decree which is not final.* A party to a contract for the exchange of land cannot be required to accept a title which has been quieted by a recent decree in a chancery suit to which he has been made a party and in which he has filed a disclaimer, as such a decree, under section 19 of the Chancery act, is not final until after three years from its date.

APPEAL from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding.

HENRY MANSFIELD, and DAVID J. COWAN, for appellant.

W. G. McROBERTS, H. D. MORGAN, and W. O. PENDARVIS, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

J. C. Ewing and P. M. Plummer entered into a contract in writing on May 9, 1921, for the exchange of a farm of 160 acres in Fulton county owned by Ewing for a lot in the city of Peoria owned by Plummer, the parties to convey the respective tracts by warranty deeds and furnish abstracts showing merchantable title. Abstracts were furnished by each party to the other. No objection was made to Plummer's title but he objected to Ewing's title. After furnishing an abstract extended and corrected, which he claimed obviated Plummer's objections, Ewing made tender of performance on his part, and upon Plummer's refusing to perform filed a bill for specific performance against Plummer in the circuit court of Peoria county. The cause was heard and a decree was entered at the January term, 1923, dismissing the bill for want of equity, from which the complainant has appealed.

Only one question is necessary to be considered, and that is the sufficiency of the abstract furnished by the appellant to show a merchantable title in him to a part of the Fulton county land,—that is, the west half of the northwest quarter of section 21, township 7, north, range 5, east of the fourth principal meridian. A regular chain of title from the United States was shown to this tract vesting in David W. Barnes on September 1, 1849. No conveyance by Barnes or his heirs or devisees is shown. The next conveyance shown by the abstract is a warranty deed from Carson Reed and wife to Thomas Barber, dated May 24, 1886. Barber died in 1917 and his title has become vested in the appellant.

The appellee insists that the absence of a conveyance from Barnes or his heirs or devisees makes the appellant's title not merchantable, while the appellant insists that the evidence is sufficient to show a conveyance from Barnes to Reed, which deed has been lost, and to show a title, based on the Statute of Limitations, which is free from reason-

able doubt and is therefore merchantable. A title, to be merchantable, need not necessarily be perfect of record. It is said in *Geithman* v. *Eichler*, 265 Ill. 579: "There is abundant authority that a title may be deemed good although there may be a possibility of a defect; that a defect in title which will excuse the performance of a contract for the purchase of land must be sufficient to cast a cloud on the title and render it suspicious in the minds of reasonable men; that a defect which is a mere possibility but a very remote or improbable contingency, which, according to ordinary experience, has no probable basis, does not show a bad or unmarketable title, but the doubt must be considerable and rational,—such as ought to induce a prudent man to pause and hesitate." This language is fortified by the citation of a number of authorities. There can be no doubt that the break in the title caused by the absence of a deed from Barnes is a defect calculated to excite the serious doubt of a reasonably prudent man as to the validity of the title and without explanation would justify the rejection of the title by a purchaser. (*Geithman* v. *Eichler, supra.*) A purchaser of land cannot be compelled to accept a doubtful title which may reasonably and fairly be questioned. If the facts throw a cloud on the title, rendering it suspicious in the minds of reasonable men, the title is not merchantable. The purchaser has the right to require that the title shall be of such a character that he will not be exposed to danger of litigation as to its validity. *Close* v. *Stuyvesant,* 132 Ill. 607; *Hoyt* v. *Tuxbury,* 70 id. 331; *Snyder* v. *Spaulding,* 57 id. 480.

The record fails entirely to support the appellant's contention that Carson Reed, who conveyed the land in 1886, had received a conveyance from David W. Barnes, the owner. That claim rests only upon the fact that Reed made the conveyance to Barber; that Barnes moved away from the community,—whether before or after the deed from Reed to Barber does not appear; that afterward,—

but whether before or after Barnes' removal or before or after his death does not appear,—Barber, the grantee, was in possesion of the land and his possession was not interfered with. It is manifest that this evidence is entirely insufficient to sustain a finding that Barnes conveyed the land to Reed. The appellant's title, therefore, rests only upon the Statute of Limitations. If Barber and his grantees down to the appellant had been in the actual, exclusive, visible, notorious and continuous adverse possession of the land from the time of Reed's deed to Barber, then the appellant has a title to the land as against all persons who were not subject to some legal disability. The serious question in the case, therefore, is whether the abstract shows that the rights of the heirs of Barnes have been barred, for otherwise it does not show a merchantable title as required by the contract.

It is contended that the Statute of Limitations began to run during the life of David W. Barnes, and that the disability of any of his heirs did not stop the running of the statute. The abstract does not justify the conclusion that the Statute of Limitations began to run in Barnes' lifetime. It may be inferred that Barnes is dead, though there is no direct proof of that fact in the abstract. If he is dead there is no evidence when he died or who were his heirs. Affidavits attached to the abstract show that he had eleven children, one of whom was living as late as 1918. Barnes may have died in 1885 or at some other time. There is nothing in the abstract by which the date can be fixed. It is sought to fix the date of Barber's taking possession of the eighty acres in question by affidavits. William Turl, who was eighty-four years old in 1920 and had resided in Fulton county since 1856, made an affidavit stating that Barber went into possession of the premises about the year 1886, and continued to reside on the same, claiming to be the owner thereof, for many years; that he was the record owner thereof at the time of his death, in October, 1917,

and that he had contracted to sell the premises to Joseph A. Ruey. Barber for several years before 1886 had been the owner of the east half of the quarter section. Although the affidavit states that he went into possession of the premises about the year 1886, this is a mere conclusion. No act from which possession can be inferred is mentioned, no circumstances showing the character of his possession, no statement that he went upon this land and began to clear it or to cultivate it or did any other act upon the land indicating an actual taking of possession. The affidavit states merely the conclusion, without a single fact to justify it. It was made thirty-five years after 1886 and states that possession was taken about that year, which might be 1887 or 1889, or later. The statement that Barber continued to reside on the land, claiming to be the owner thereof, for many years, is not evidence of the time when he began to live on the land. The statement that he was the record owner of the land at the time of his death is incorrect, for the record did not show that he was the owner at that time. Clearly the affidavit states merely the indefinite recollection by affiant of neighborhood events of no particular importance, occurring many years before, in which he had no special interest and which are not fixed in his mind by any special occurrence to which he can refer.

Martin Dibert, sixty-three years old, made an affidavit that he had known the land for more than thirty-five years, and knew of his own personal knowledge that since the purchase of the premises by Thomas Barber in about the year 1886, Barber had possession of the premises until the time of his death and that his heirs have had possession since his death, and that during all of that period no other person has claimed any right, title or interest in the premises. This affidavit also is indefinite. "About the year 1886" does not indicate any particular time when Barber took possession, and the affiant does not state that he had any knowledge of

the purchase or any more definite knowledge of the time than about 1886.

Joseph Ruey, forty-seven years old, who bought the land from Thomas Barber and had lived within three miles of it all his life, made an affidavit that he had known the land for thirty-five years, that he bought the land from Barber in 1916, and that Barber had been in possession of the land thirty-five or forty years prior to the time he bought it. Thirty-five years prior to the time he bought it would be 1881. It is therefore manifest that Ruey's affidavit simply means that Barber had been in possession for a long time and he did not know how long.

The question who were David W. Barnes' heirs depends upon the respective dates on which he and his children or other descendants died, and not a single date of any such occurrence appears in the record. If Barnes died at any time before Barber took actual and adverse possession of the land, then the title of any of the heirs of Barnes who may have been under a legal disability was not barred until the expiration of two years from the time of the removal of the disability. There is no evidence that some one of these heirs may not have been insane. Some one of them whose claim is barred may have been married and his wife have an inchoate right of dower which will be enforcible upon his death.

Thomas J. Barnes, sixty-five years old, of Montrose, Lee county, Iowa, a grandson of David W. Barnes, made an affidavit giving the names of the eleven children of his grandfather, stating that they were all dead except possibly Asa, whom affiant saw about four years before when Asa visited the community in which the affiant lived. He was then about seventy years of age and the affiant had not heard from him since. He further stated that there were no persons now living, heirs of David W. Barnes, who might or could claim any right, title or interest in said lands and that none of the family of Barnes claimed or ever as-

serted or attempted to assert any right, title or interest in said premises by reason of their descent from Barnes, but all of said heirs-at-law well knew that Barnes had lawfully disposed of said premises before his death. The affidavit does not pretend to state how he had disposed of them or how all the heirs knew it, and is merely a general statement of the witness' opinions and conclusions. It does not purport to give the names of Barnes' heirs, and does not state who, if any, of his children survived him, or what children or grandchildren, if any, were among his heirs. The statement that none of the heirs could now claim any interest in the land was a mere opinion with no facts stated on which to base it.

These affidavits were *ex parte* statements, the persons making them were not subjected to cross-examination, the statements contained in them are vague, indefinite and uncertain and consist largely of conclusions and opinions of the persons making the affidavits, without any statement of facts showing upon what the conclusions are based and without evidence that the persons making the affidavits are possessed of sufficient knowledge of law and fact to draw the conclusions which they do. It is proper under some circumstances to supply in an abstract the facts which do not ordinarily appear or cannot appear of record, by affidavits, but if this may be done the affidavits should set forth the facts with the same certainty and precision with which such facts must be proved in court in a contest over the title. As was said in the case of *Clark* v. *Jackson*, 222 Ill. 13: "If the witness is not able to state the evidentiary facts he is certainly disqualified from stating the conclusion, and lest he may not be able to draw the proper conclusion the law will not permit him to draw it at all but will require him to state the evidentiary facts, and leave it for the court, learned in the law, to draw the conclusion."

After the appellant submitted his abstract, with the corrections and additions, to the appellee and the latter rejected

the title and declared the deal off, the appellant filed a bill to quiet title in the circuit court of Fulton county, making the appellee a party to the suit as well as the unknown owners and unknown heirs of the children of David W. Barnes and of various other persons. The appellee filed a disclaimer, and on December 19, 1921, a decree was rendered quieting the appellant's title to the premises in fee simple, subject to certain mortgage liens and the rights of the appellee by virtue of his contract of purchase. The appellant claims that the appellee is bound by this decree and that he cannot question the appellant's title. Regardless of other objections which might be taken to this position, the decree is not a final decree. Service was had upon the unknown owners and unknown heirs who were made parties to the bill by publication, and section 19 of the act regulating practice in chancery provides that a decree entered upon such service shall be subject to be set aside, altered or amended in accordance with the section, upon the application of any of the defendants so served within one year after notice in writing given him of such decree, or within three years after such decree if such notice shall not have been given. Such a decree does not become final until the lapse of three years but may be vacated within that time, and if it is so vacated all rights acquired under it are also set aside. (*Sale v. Fike*, 54 Ill. 292; *Martin v. Gilmore*, 72 id. 193.) A vendee cannot be required to accept a title based upon a decree which is not final but under which further litigation may be forced upon him within three years.

The decree of the circuit court will be affirmed.

*Decree affirmed.*