## MIDDLETON v. MOORE. (No. 2734.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 24, 1926. Rehearing Denied Jan. 5, 1927.)

1. **Specific performance** ⊗⇒58—**Vendor cannot enforce specific performance of land contract authorizing bank to pay deposited sum as liquidated damages to vendor on default.**

Where sum of money was placed in bank under provision of land contract, authorizing bank to pay it to vendor as liquidated damages, if purchaser failed to close deal, "after sufficient title has been made," vendor cannot enforce specific performance of contract.

2. **Contracts** ⊗⇒143—**It is assumed that every provision of written and executed contract involving property rights was placed there for definite purpose.**

In construing written and executed contract involving property rights of persons, court will assume that every provision therein was placed there for definite purpose.

3. **Damages** ⊗⇒78(2)—**Use of term "forfeiture" or "liquidated damages" in contract does not determine whether sum named is penalty or liquidated damages.**

Use of term "forfeiture" or "liquidated damages," in land contract does not determine whether sum named is penalty or liquidated damages, since class to which it belongs must be determined from whole of contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forfeit—Forfeiture; Liquidated Damages.]

4. **Specific performance** ⊗⇒95—**Where evidence showed defect in plaintiff's title, he cannot enforce specific performance of land contract without showing defendant's waiver of defect.**

Where evidence in suit for specific performance of land contract requiring good and merchantable title showed defect in plaintiff's title, in that it depended on judgment rendered within two years, not based on personal service on defendants, and without appearance by them, it devolved on him to plead waiver of such provision by defendant before he could maintain action for specific performance.

5. **Vendor and purchaser** ⊗⇒130(7)—**Title by limitation, in absence of proof that defect could be remedied, held not "good and merchantable title" within land contract.**

Title by limitation, in absence of proof that defect in record title, in that it depended on judgment rendered within two years, not based on personal service on defendants, and without appearance by them, could be remedied within reasonable time, does not constitute tendering

---

of "good and merchantable title" required in land contract.

**6. Vendor and purchaser ⬥130(2)—Right of defendant, served by publication, who made no appearance to attack judgment, rendered title depending thereon defective, precluding specific performance (Rev. St. 1911, art. 2026).**

Right of defendant, served by publication, who made no appearance, to attack judgment under Rev. St. 1911, art. 2026, within two years after its rendition, *held* to render title to land depending thereon defective, precluding vendor from enforcing specific performance of contract for sale.

**7. Interpleader ⬥35—In suit to enforce land contract, defendant holding deposit for liquidated damages can pay deposit into court and recover attorney's fees.**

In suit to enforce land contract, bank, which was party defendant as stakeholder of deposit designated as liquidated damages, is entitled to judgment for attorney's fees, to be paid out of such money, and to pay such deposit into court.

**8. Interpleader ⬥35—In suit to enforce land contract, in which stakeholder tendered deposit into court, prevailing party held entitled to judgment for costs to be paid out of deposit.**

In vendor's suit against purchaser, who refused to complete land contract, in which bank which held defendant's deposit as stakeholder tendered deposit into court, prevailing party *held* entitled to judgment for costs to be paid out of such deposit.

**9. Appeal and error ⬥1178(8)—Appellate court, reversing judgment in action to specifically perform land contract, will remand to allow amendment relating to waiver of defect in title.**

Court of Civil Appeals, in reversing judgment for plaintiff in suit to specifically perform land contract, will remand cause so that plaintiff may amend pleadings relating to waiver of defect in title.

Appeal from District Court, Lubbock County; Hill Stewart, Special Judge.

Suit by Louie F. Moore against J. P. Middleton and another. Judgment for plaintiff against named defendant and for defendant, the First National Bank of Lubbock, for attorney's fees, and named defendant appeals. Reversed and remanded.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellant.

Lockhart & Garrard and Wilson & Rahdal, all of Lubbock, for appellee.

RANDOLPH, J. This suit was filed by appellee as plaintiff against appellant as defendant; the First National Bank of Lubbock being made a party defendant also as stakeholder.

Plaintiff's petition contains two "counts"; the first count being an action for specific performance, the second an action for the recovery of $500 named in the written contract between the parties as liquidated damages.

Defendant Middleton answered by general demurrer to the whole of plaintiff's petition; a general demurrer to the first count thereof; special exception, which in effect is a general exception that the first count does not state a cause of action; general denial; and an answer to the merits. Defendant bank filed its answer setting up its position as stakeholder, and praying for an allowance as attorney's fees.

The case was tried before a jury, and, on answers by them to special issues submitted by the court, judgment was rendered in favor of plaintiff against defendant, Middleton, decreeing specific performance of the contract, and in favor of the bank for the sum of $50 attorney's fees. No disposition was made of the $500 liquidated damages tendered into the registry of the court by the defendant bank.

We will not attempt to discuss the questions presented in appellant's brief in the order in which they are presented here, but will only discuss such questions as we believe are material to a proper disposition of the case.

This suit arose out of defendant's refusal to perform a contract for the purchase and sale of land in Lubbock county. Appellant raises the question that, under the terms of the contract, which provides that, in the event of the failure on the part of appellant to close the deal, after such title has been made, the stakeholder is authorized to pay over to the appellee the forfeit money as liquidated damages, the appellant had his option, even if merchantable title was tendered, to refuse to accept and pay for the land, and the appellee was bound to accept the forfeit in lieu of performance, and therefore the judgment on this question is without warrant of law.

That provision of the contract of sale here involved is as follows:

"Second party places with this contract in the First National Bank of Lubbock, Tex., the sum of $500 forfeit money, which shall be applied as part payment when the deal is closed; and, in the event of failure on the part of second party to close the deal, after sufficient title has been made on or before December 1, 1925, hereafter, said bank is authorized to pay over to said party of the first part the said forfeit as liquidated damages."

[1] We recognize the rule to be that, where a sum of money has been placed in a bank under the provision of a contract, as was done in this case, and the seller expressly or impliedly agrees to accept such sum as liquidated damages in lieu of performance, then the seller cannot enforce specific performance of the contract, but must rely upon the provision for liquidated damages. The contention of appellee, as we understand his,

position, is that the provision of the contract here in question does not expressly nor impliedly bind the plaintiff to accept such sum as liquidated damages.

[2] We are bound to conclude that, when a contract is written and executed involving the property rights of persons, every provision therein contained was placed in it for a definite purpose. This being true, for what purpose was this provision inserted? If the plaintiff "authorized" the bank to pay him this money on failure of the purchaser to perform the contract, can any other reasonable conclusion be drawn than that he thereby contracts that he will accept it? The option to perform or to pay liquidated damages is not given to the plaintiff, but is a contractual right of the defendant.

In the case of Redwine v. Hudman, 104 Tex. 24, 133 S. W. 428, Justice Williams quotes with approval the rule laid down in Fry on Specific Performance, § 15, as follows:

"The question always is, What is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act, or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing the performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for a proceeding against the party having the election, to compel the performance of the other alternative."

It will be observed that the provision here being considered recognizes the option of defendant to pay the $500 in lieu of performance by providing his right to pay it "after sufficient title has been made."

In the case of Huffhines v. Bourland, 280 S. W. 561, the Commission of Appeals says:

"A stipulation contained in a contract of sale executed by two parties to the effect that a sum of money, which is placed in escrow by the proposed purchaser and which in law is regarded as liquidated damages, shall be paid to the seller in case the latter fulfills his obligations and the purchaser fails to perform his obligation to purchase, carries with it the necessary implication that the seller binds himself, by the stipulation, to accept such sum as compensation for his loss resulting from the happening of the contingency named. He is, by his own act, bound to his legal remedy for damages. Having thus bound himself to accept the sum for such damages as may be suffered by reason of nonperformance of the contract on the part of the purchaser, the seller cannot sue the proposed purchaser for specific performance of the contract."

The appellee seeks to distinguish the case at bar from the Huffhines Case, because in the Huffhines Case the contract provided that,

if the purchaser failed or refused to comply with the terms of the contract, "then said $1,000 shall be paid to the first party as liquidated damages." He insists that the word "shall" makes it mandatory on the plaintiff to accept, and this differentiates it from the contract in this case.

The language of each of the contracts considered, in the Huffhines Case and in this case, devolves upon the stakeholder an imperative duty which the courts would compel it to perform, but does the provision in the contract considered in the Huffhines Case any more imply an acceptance by the seller of the provision to pay him liquidated damages than it does in this case? In neither case has the seller expressly agreed to accept the sum named in lieu of performance. In each case, however, the implication is that he did agree to accept. If not, why provide that it might be done?

As supporting our view of this question, we also cite Carter v. Smith (Tex. Civ. App.) 184 S. W. 244, writ denied; Simpson v. Eardley (Tex. Civ. App.) 137 S. W. 378; Pomeroy on Specific Performance of Contracts, § 50; 7 L. R. A. p. 875, § 5; Davis v. Isenstein, 257 Ill. 260, 100 N. E. 940, 45 L. R. A. (N. S.) 52.

[3] It is immaterial that the parties provide for a "forfeiture" as liquidated damages, for the use of that term does not indicate a penalty as distinguished from liquidated damages. Eakin v. Scott, 70 Tex. 442, 7 S. W. 778, 779.

In this contract it is apparent that the damages are uncertain and not easy of ascertainment, and that the parties had by such provision made an adjustment of such damages. Durst v. Swift, 11 Tex. 273.

The mere use of the term "penalty" or the term "liquidated damages" does not conclude whether the sum named is a penalty or is liquidated damages, but as to which class it belongs must be gathered from the whole of the contract. Yetter v. Hudson, 57 Tex. 604, 613.

[4] The contract in suit here also provides:

"Party of the first part also agrees to furnish party of the second part one complete abstract covering tracts Nos. 1 and 2 aforesaid, showing good and merchantable title in him, subject only to the amounts to be assumed by party of the second part. In the event title is not merchantable time is to be allowed in which to perfect same."

Based upon this provision, appellant assigns error as follows:

"Since the appellee or vendor sued for specific performance of a contract requiring him to furnish a complete abstract of title to the above land, showing him to be the owner thereof by good and merchantable title, subject only to the amounts to be assumed by appellant, and since the abstracts offered in evidence do not show merchantable title in him, but do show a defect rendering said title unmerchantable in that appellee's title depended on a judgment dated May

6, 1924, not based on personal service on the defendants, but based on service by publication (and no appearance by them), and since appellee did not plead or prove a waiver of furnishing abstracts showing merchantable title, the court should have refused judgment for specific performance."

The question of waiver of this provision of the contract by the defendant is not before us. Whether or not the defendant waived the presentation of such abstracts by his refusal to accept same, and having them examined, and then giving the plaintiff an opportunity to cure such defect, was not pleaded by the plaintiff; hence the question as to whether or not such defect existed in the title shown by the abstract is properly before us.

It being incumbent on the plaintiff to prove that he complied with the terms of the contract and the evidence showing a defect in the title, it devolved upon him to plead a waiver of this provision by the defendant before he would be entitled to maintain his action for specific performance. Scarbrough v. Alcorn, 74 Tex. 358, 12 S. W. 72; Texas Produce Co. v. Turner (Tex. Sup.) 27 S. W. 583; Howard v. Metcalf (Tex. Civ. App.) 26 S. W. 449; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979.

One George L. Allen, who preceded plaintiff as the owner of title to the land in controversy, joined by his wife, executed and delivered to the City State Bank a deed of trust securing certain indebtedness therein described. Allen then conveyed the land to one T. S. De Armand, and on the same day Allen and De Armand entered into a contract in which it is disclosed that the purpose of the conveyance from Allen to De Armand was that De Armand should have the authority to plat the land into lots as an addition to the city of Lubbock, and to sell said lots upon terms stated, and apply the proceeds to the payment of debts due the City State Bank. This contract also provides that, after said indebtedness is paid, the said De Armand is to reconvey to Allen all unsold lots. This instrument was dated, as was the deed from Allen to De Armand, December 12, 1910. In 1912 De Armand conveyed the land to the City State Bank, reciting a consideration of $1 and other good and valuable considerations. The City State Bank then sold the land to J. H. Roles, and Roles sold it to the plaintiff.

While Roles held the title to the land, he filed suit against George L. Allen and his wife, and the unknown heirs of each, as indicated in the copy of the judgment introduced in evidence, to recover title and possession of the land in controversy. The judgment was rendered on May 6, 1924, upon service by publication.

There is nothing in the record disclosing any authority vested in De Armand to transfer the land to the City State Bank. No waiver of Allen's interest in the land, or of his consent to the transfer, is shown, and whether or not Allen was divested of his interest in said land depends solely on the judgment rendered on service by publication. That judgment is dated May 6, 1924. The judgment in this case was rendered May 6, 1926, just two years after the rendition of the judgment in the suit brought by Roles against Allen. Consequently, at the time of the making of the contract herein sued on, the two years in which Allen et al. had to move to set aside that judgment had not expired.

There is in the abstract introduced in this case an affidavit by De Armand, dated June 17, 1922, in which it is recited that the City State Bank has had actual, open, and notorious possession of said lands for more than ten years.

The question for our solution under these facts are: (1) The period of time for the judgment in the suit brought by Roles against Allen et al., not having expired, was such judgment a bar to any claim by Allen or wife to the land in controversy; and (2) if not, then was the title by limitation as proven and tendered a sufficient compliance with the contract to furnish a merchantable title?

The appellee cites, and strenuously urges upon this court, the decision in the case of Rabinowitz v. North Texas Realty Co., 270 S. W. 579, as settling these questions. We have carefully considered that case, and, as the Supreme Court dismissed the application for writ of error for want of jurisdiction, and did not in any way approve the holding in that case, and believing that the following ruling of the Court of Civil Appeals is erroneous, we respectfully dissent from it. Judge Baugh, speaking for the Austin Court of Civil Appeals, in the Rabinowitz Case, says:

"Appellant next contends that the proof showed that said contract was unenforceable, in that Darnall's title was not 'good'; his contention being that it was a limitation title, and that the decree of the district court of Denton county removing cloud therefrom was rendered on March 10, 1921, only 30 days before said contract was made, and that under article 2026, Revised Statutes, said decree could have been attacked at any time within two years after its rendition.

"The rule seems well settled that a contract for a 'good title' to land is not complied with by showing a title by limitation. Wakeland v. Robertson (Tex. Civ. App.) 219 S. W. 842, and cases there cited; also, Cline v. Booty (Tex. Civ. App.) 175 S. W. 1081. In those cases, however, a limitation title seems to have been the only title the vendor had. That is not true in the instant case. The record shows in the case before us that the suit to remove cloud was brought primarily to correct inaccurate descriptions in field notes, calls, etc., and to establish instruments which had been burned or lost in the destruction of the courthouse of Denton county by fire back in 1875. After hearing the testimony and examining the evidence, which

is briefly set out in the record, the trial court in that suit expressly found that M. M. Shaw, who was Darnall's grantor, in addition to having a limitation title to said lands, held and occupied same through and under a perfect chain of title thereto from the state of Texas down to him, consisting of muniments of title duly registered, and all executed and delivered for valuable considerations, and so stated in his decree. This, we think, was sufficient to make Darnall's title a 'good' record title. As stated in Nicholson v. Lieber (Tex. Civ. App.) 153 S. W. 645, even if Darnall had only a limitation title originally: 'A title by limitation can be perfected into a record title by either one of two methods: By proper releases or deeds from all adverse claimants, or by suit and final adjudication between all claimants in a court of competent jurisdiction.'

"Nor do we think, as urged by appellant, that the right of the defendants cited by publication to attack said judgment under article 2026, Revised Statutes, within two years after its rendition, was a valid objection. Of course, that was a possibility, but so remote as to be negligible. A bare possibility that a title otherwise regular may become defective is not a valid objection to same. Duncan v. Glore, 189 Ky. 132. 224 S. W. 678; 3 Elliot on Contracts, par. 2332."

It will be seen that Judge Baugh relies largely upon the case of Nicholson v. Lieber (Tex. Civ. App.) 153 S. W. 643, as authority for his holding in the Rabinowitz Case. We think his interpretation of the opinion in the Nicholson Case is wrong. The Court of Civil Appeals in the Nicholson Case was passing upon the failure of the party to do as he had contracted to do, point out the defects in the title; that, as he had raised no objections to the title on the ground that the owner showed a title by limitation, and had not given the seller an opportunity to remedy any defects in the title on that ground, he had waived his right to object to the title for that reason. This ruling is also made in the same case by the Commission of Appeals, 206 S. W. 512.

We wish to state here, however, that we concede the correctness of both decisions upon the failure of the party to point out such defects, and that, having failed to do so, he waived his right to make objections to the title on that ground. But we do not concede that a party tendering a limitation title has complied with his contract to furnish a "good and merchantable title." Such seller certainly has the right to be notified of such defect in his title, and to be given a reasonable opportunity to cure the defects so as to make it a good and merchantable title. But we certainly do not mean to hold that, when a party has contracted to furnish a purchaser a merchantable title, and tenders a title that is based purely on limitation existing in parole, he must point out such defect, and then wait the slow process of a court to turn it into a "good" title. When parties enter into a trade for property, they do so upon conditions then existing, and those conditions may be entirely changed if the purchaser has to wait an unreasonable time for the seller to invade the courts, and thus perfect his title by limitation.

[5] We hold, therefore, that title by limitation shown by affidavits of the parties, or the existence of limitation title when properly proven, in the absence of proof that the defect could have been remedied within a reasonable time, does not constitute the tendering of a "good and merchantable title." Wakeland v. Robertson (Tex. Civ. App.) 219 S. W. 842, and authorities therein cited; Cline v. Booty (Tex. Civ. App.) 175 S. W. 1081, writ denied; Adkins v. Gillespie (Tex. Civ. App.) 189 S. W. 275.

[6] Nor can we agree with the Court of Civil Appeals in the Rabinowitz Case "that the right of the defendants, cited by publication, to attack said judgment under article 2026, Revised Statutes 1911, within two years after its rendition," was not a valid objection, and that it was not a mere possibility so remote as to be negligible, or was a bare possibility that a title otherwise regular might become defective. Certainly there is more than a "bare possibility" that the title might become defective. The very provision of the statute giving the right to the defendant in the judgment to have it reviewed is a potential threat of other litigation, and it renders the title then and there defective until the time has expired in which the judgment may be attacked.

[7] The bank as stakeholder was entitled to pay the money held by it into court, and is entitled to judgment for attorney's fees to be paid out of the money so paid into the court.

[8] On proper pleading, in order that the party prevailing in the trial court might recover his costs, we think that the judgment of the trial court should also be for such sum so paid out of such fund in favor of the party securing judgment in that court. Nixon v. N. Y. Life Ins. Co., 100 Tex. 250–264; 98 S. W. 380, 99 S. W. 403; Great Southern Life Ins. Co. v. Kinney (Tex. Civ. App.) 276 S. W. 741, 742; Williams v. Simon (Tex. Civ. App.) 235 S. W. 257–259; Hall v. San Jacinto St. Bank (Tex. Civ. App.) 255 S. W. 506–509; McCormick v. National Bank of Commerce (Tex. Civ. App.) 106 S. W. 748; Bolin v. St. Louis & S. W. Ry. Co. (Tex. Civ. App.) 61 S. W. 444.

[9] The judgment of the trial court will not be reversed and rendered, but under the authority of Moon Buggy Co. v. Moore-Hustead Co. (Tex. Civ. App.) 196 S. W. 328; Combes v. Stringer, 106 Tex. 427, 167 S. W. 217; Camden Fire Ins. Co. v. Yarbrough (Tex. Com. App.) 215 S. W. 842; Summerhill v. Hanner, 72 Tex. 224, 9 S. W. 881, the judgment will be reversed and remanded that the appellee may have an opportunity to

amend his pleadings as they relate to the waiver of the defect in the title so far as such pleading concerns his right to recover the $500 as liquidated damages.