**John NOWLIN, Appellant,**

**v.**

**COLUMBIA SCHOOL DISTRICT, Edwin D. Bihr, President, Lee Schaperkotter, Vice President, A. G. Unkelsbay, Member, M. Eugene Windmiller, Member, John W. Woodward, Member, J. R. Warrick, Member, and James E. Saunders, Secretary, Respondents.**

**No. 50995.**

Supreme Court of Missouri, Division No. 2.

March 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied April 11, 1966.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for appellant.

Spencer, Hines & Petri, Columbia, for respondents.

EAGER, Presiding Judge.

This is an action for the return of a ten percent deposit made by plaintiff upon the purchase, at public sale, of one-half acre of land from defendant School District. The basis of plaintiff's action was that defendant had not furnished a merchantable title to the premises in accordance with its advertisement and its announcement at the sale. Defendant denied that it did not have merchantable title, and counterclaimed for specific performance of the contract of purchase.

An opinion has previously been written and filed in the case, but a rehearing was granted and the case has been reargued. We shall, in this opinion, incorporate certain parts of the prior opinion without quotations. The cause was tried to the court and taken under advisement. Thereafter, the court found generally for defendant on plaintiff's petition, found for the defendant on its counterclaim, decreed specific performance of the contract, and ordered that plaintiff pay to defendant $7,740 as the balance of the purchase price and that he accept delivery of defendant's deed. Upon the overruling of plaintiff's after-trial motions a memorandum opinion was filed, which will be referred to later. Title to real estate is involved and we have jurisdiction.

Plaintiff's sole claim that the title was not merchantable rests in the contention that a reversionary interest was created by an 1867 deed, and that two suits to determine title had been ineffective to cure the defect. In 1866 one John F. Burnam acquired by Sheriff's deed in partition "Part of the North West Quarter of Section Nine (9), Township Forty Eight (48), Range Twelve (12), containing 137 acres." Shortly thereafter he had a "courses and distances" survey made by which it was shown that he had 126.16 acres, being a part of the North West Quarter of said

Section Nine. On December 5, 1867, John F. Burnam conveyed by warranty deed to "M. R. Arnold, President of the Board of Education for Township 48, Range 12" a tract therein described as: "Commencing at the NE corner of the NW Quarter of Section Nine (9), Township (48), Range Twelve (12); thence South Sixty Nine yards; thence West Thirty five yards; thence North Sixty nine yards; thence East Thirty five yards to the beginning, containing one half acre, more or less." The habendum and warranty clauses of that deed were as follows: "TO HAVE AND TO HOLD the same, together with all the rights, immunities, privileges and appurtenances to the same belonging, unto the said party of the Second Part and to his successor, *so long as the same shall be used as a site for a school house in said district, and used as such, and no longer. Whenever it fails to be so used, then to revert to the said Burnam.* The said party of the first part hereby covenanting that he, & his heirs, executors and administrators shall and will Warrant and Defend the title to the premises unto the said party of the Second Part and to his successors forever, against the lawful claims of all persons whomsoever, *subject to the condition aforesaid.*" (Italics added.)

The property was occupied by what was known as the Zaring School District (it is not affirmatively shown that it was the successor to the grantee in the 1867 deed, but no such question is raised) until the end of the school year of 1961–1962, namely, until the spring of 1962. During that school year that district was annexed to the Columbia School District, defendant herein. During the following school year (1962–1963) the children of the annexed district were transported to schools within the City of Columbia. The property was then declared nonusable for school purposes, and defendant authorized its sale at auction on January 26, 1963. The Notice of Public Auction prescribed the terms of sale and stated that the transfer of ownership would be by merchantable title to the successful bidder and that an abstract of title would be furnished.

Prior to the sale date and on October 3, 1962, the School District filed its petition to ascertain and determine the estate, title and interest of plaintiff in the described tract and also the interests of those named as defendants. The description of the real estate in the petition and in the subsequent decree was the same as in the 1867 deed from Burnam. By paragraph 2 of the petition the plaintiff alleged its adverse possession of said lands for more than 31 years, "to-wit: Ninety five (95) years." By paragraph 4 of the petition the Burnam deed of 1867 was pleaded and it was alleged that this deed reserved "in said John F. Burnam, *personally,* a reversionary interest whenever said real estate was no longer used for a school house site." By paragraph 5 it was pleaded, "That by law and equity the *personal* reversion of the said defendant John F. Burnam has long since been extinguished and of no legal effect, but that the same constitutes a cloud on the title of plaintiff." (Italics added.) Among the defendants named in the suit were predecessors and successors in title (again under vague, incomplete descriptions to the lands) of John F. Burnam, as well as John F. Burnam himself, and also the "unknown consorts, heirs, devisees, donees, alienees or immediate, mesne or remote, voluntary or involuntary Grantees" of each of such parties, if dead. Also named as defendants were Russell Thielbar and Grace Thielbar, his wife, who in 1945 had obtained a decree quieting title in themselves to a tract which included adjoining lands and the school site; the School District alleged that the 1945 decree was a cloud on its title, although it had not been named as a party defendant in the Thielbar quiet title suit.

The prayer of the School District's petition in its title suit, in usual form, was "that the court decree and adjudge that the plaintiff is the sole owner of said real estate (therein described as per the 1867 deed), and that the defendants and all per-

sons claiming by, through or under said defendants be forever barred and enjoined from asserting any claim, right, title and interest in and to said real estate or any part thereof, adverse to plaintiff, and that plaintiff's title in and to said real estate be quieted, perfected and the clouds against said real estate removed, * * *." (Parentheses added.) Service in the cause was by publication, except for the Thielbars who were served personally.

The decree for plaintiff, Columbia School District, was dated November 30, 1962, and filed December 1, 1962; it divested the real estate out of defendants and each of them and vested the same in plaintiff, and it was "further ordered, adjudged and decreed by the Court, that the above named defendants and each of them, and each and every one claiming by, through or under any one of them, be forever barred and enjoined from asserting any right, title or interest in and to said real estate or any part thereof adverse to the plaintiff, School District of Columbia, Columbia, Missouri, and those who may hereafter claim, by, through or under said plaintiff." Quite apparently, the petition was based in part upon the provisions of § 527.150,[1] and the decree was in accordance with that statutory authority.

■ Undoubtedly the words used in the 1867 deed[2] created a fee simple determinable under the Missouri authorities. Donehue v. Nilges, 364 Mo. 705, 266 S.W. 2d 553, 45 A.L.R.2d 1150; Board v. Nevada School District, 363 Mo. 328, 251 S.W.2d 20; Chouteau v. City of St. Louis, 331 Mo. 781, 55 S.W.2d 299. Also, under appropriate provisions a reversionary interest may descend to grantor's heirs, Smith v. School Dist. No. 6 of Jefferson County, Mo., 250 S.W.2d 795, Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33 A.L.R.2d 1431, at least in the absence of a judicial determination

that the interest was merely a personal right. We have been cited to no case directly in point on the wording of the Burnam deed.

■ We have, however, an adjudication upon a petition to ascertain and determine title which ruled, although in general terms, that John F. Burnam retained only a personal reversionary right under the 1867 deed. The nature of the reversion was an issue directly raised in the petition. By that decree, if final and not subject to an effective attack, it would follow that Burnam's reversionary right did not descend to his heirs. We may take judicial notice of the fact that Burnam was dead in 1962. He did not attempt to convey or assign his possibility of reversion, for the abstract of the record (an exhibit here) shows that when he conveyed his land to one Clark, his description called for one acre less than the amount which his own survey showed. Regardless of the power or lack of power to convey such an interest, Donehue v. Nilges, 364 Mo. 705, 266 S.W.2d 553, 45 A.L.R.2d 1150; Smith v. School Dist. No. 6 of Jefferson County, Mo., 250 S.W.2d 795, Burnam thus evidenced an intent *not* to assign or convey his reversionary interest in the school tract. In his deed to Clark, Burnam not only omitted one acre, but he warranted that he would defend the title to the land thus conveyed against the lawful claims of all persons whomsoever. We will not attribute to him an intent to include in such a deed the school tract which he had conveyed about one year earlier, retaining only a possibility of reverter. Our ruling on this point is in accordance with the memorandum opinion filed by the trial court, which we may consider as containing its findings. Civil Rule 73.01.

■ We shall not attempt here to re-adjudicate the issue concerning the na-

---

1. All statutory references are to RSMo 1959, V.A.M.S.

2. "* * * so long as the same shall be used as a site for a school house in said district, and used as such, and no longer. Whenever it fails to be so used, then to revert to said Burnam. * * *"

ture of Burnam's reversionary interest. There was no appeal from the judgment. The question does remain, however,—was the determination in the quiet title judgment binding upon plaintiff at the time his attorney examined the abstract and a deed was tendered? The judgment was dated November 30, 1962. This present suit was filed on July 5, 1963. It was, of course, during that interim that plaintiff rejected the title. Sections 511.170–511.230 provide the time limitations and the manner of reopening judgments upon default in quiet title suits, as well as others. In the absence of notice served upon a nonappearing defendant after the judgment, a defendant may file petition for review within three years after the judgment is rendered. Section 511.190. If such be not done, "the same shall stand absolute." See also Civil Rules 74.12–74.15, inclusive. There has been in the past some misapprehension as to the applicability of § 527.210, § 527.220 in similar situations, but it has now been held specifically that those sections have no applicability to judgments in suits to quiet and determine title. Stull v. Johnson, Mo., 280 S.W.2d 71; Dillbeck v. Johnson, 344 Mo. 845, 129 S.W.2d 885.

It seems to be established, and we so hold, that a judgment determining title, based upon constructive service without personal appearance, is not final until the expiration of three years after its rendition. The cases in Missouri are few and not so definite as might be desired; however, that seems to be the necessary result of the rulings in Osage Investment Co. v. Sigrist, 298 Mo. 139, 250 S.W. 39, and Ives v. Crawford County Farmers' Bank, 140 Mo.App. 293, 124 S.W. 23. In Sigrist, supra, the court said at 250 S.W. loc. cit. 40: "In fact, a judgment by default, rendered upon constructive service, is, as between the parties, essentially a conditional judgment, one which becomes final and absolute only at the expiration of the time limited by the statute, and which in the meantime is liable to be opened whenever the defendant complies with the statutory formula. See Albright v. Warkentin, 31 Kan. 442, 445, 2 Pac. 614." It has been held very specifically in other jurisdictions that such a judgment in a quiet title suit may not be relied upon as final for the purpose of creating a marketable title until after the expiration of the statutory time allowed for attacking the judgment by motion or petition for review. Morley v. Gieseker, 142 Colo. 490, 351 P.2d 392; Ewing v. Plummer, 308 Ill. 585, 140 N.E. 42; Dalton v. Lybarger, 152 Ark. 192, 237 S.W. 694; Middleton v. Moore, Tex. Civ.App., 289 S.W. 1045; Parker v. Mouse, 148 Kan. 643, 84 P.2d 941; Reese v. Levin, 98 Fla. 397, 123 So. 809; Wurfel v. Bockler, 106 Or. 579, 210 P. 213. We deem it unnecessary to discuss these authorities. Here, while we consider that the issue of Burnam's reversion was adjudicated, the right of his heirs to question the judgment within three years by petition for review was not such a bare possibility that we may disregard it. We cannot say that, as of the time of performance of the contract, the title decree had made the title merchantable, if it was not merchantable earlier. It may be that no petition for review has yet been filed, but we cannot impose upon the plaintiff a finality resulting from the lapse of three years, most of which has run (if so) since the rights of the parties became fixed by refusal to perform. Middleton v. Moore, Tex.Civ.App., 289 S.W. 1045, 1049.

We hold that the conclusion of the trial court in the present case that the reversion descended to Burnam's heirs (it not having been assigned or conveyed), but that it was barred by the quiet title decree, was incorrect in both particulars. If the members of the Bar wish to approve titles based upon such a decree prior to the expiration of three years, doing so because of the improbability of attack, that is their privilege.

Plaintiff's assertions that the quiet title decree was void because the petition was fraudulent in alleging adverse posses-

sion hardly justifies substantial consideration. More specifically, plaintiff says that the School District's possession was merely permissive until the school was abandoned in the spring of 1962. The petition alleged adverse possession generally against all defendants, and that none of the defendants had been in possession for 95 years; it also alleged in some detail the circumstance of the Burnam deed, its contention that the reversion therein was merely *personal,* and the claimed fact that the reversion had long since expired. Since Burnam's deed constituted a fee title except for the possibility of a reverter, we see no bad faith in these allegations as against his heirs; nor would it constitute fraud or bad faith for the School District to claim adverse possession as against the Thielbars (alleging the necessary facts) who had no interest in any reversion, but who had included the school tract in their quiet title judgment. The School District's judgment quieting the title was not void for the reasons claimed.

■ The remaining question concerns the matter of title insurance. After plaintiff had objected to the title as shown by the abstract and negotiations had accomplished nothing, plaintiff's counsel wrote to defendant's counsel on March 29, 1963: " * * * The only thing that will really satisfy us in this case is if we void the deal and you give us back our escrow money, or you furnish us with a company that will write title insurance on this property." At the trial the court excluded that letter, but we deem that ruling to have been erroneous and we consider the letter here. The court obviously took the view at that time that the matter of title insurance was not relevant. In defendant's answer, however, it had pleaded that plaintiff had agreed to perform the contract if defendant would "furnish him with a company that would write title insurance on the property," and that defendant had done so. After the exclusion of the above letter defendant made an offer to prove the above statement of plaintiff's counsel and

further to prove that a title insurance company had not only offered insurance on the property but had actually issued a title policy, defendant having paid for the title examination and the policy. The court made no specific ruling on the offer, but did not rescind its prior ruling on the letter. It was then shown by oral evidence that counsel for the respective parties had orally discussed the question of title insurance; further testimony that defendant had agreed that it would try to get title insurance and that it did later get title insurance, was admitted solely upon the claim of defendant for the recovery of $55.40 paid for the title insurance examination, as asserted in its counterclaim. To this limited purpose the further testimony was: that defendant applied for title insurance, paid $55.40 for the title examination and miscellaneous expense, and that a title policy was actually issued in the name of the School District; that it could not be issued in plaintiff's name because he had refused to accept a deed. A title policy was physically produced at the trial. The attitude of plaintiff's counsel apparently was that a title policy in the name of the School District did not comply with his offer, and that he had never "authorized" a title policy in its name. The time when defendant had proffered the title policy (or title insurance) to plaintiff was left unclear, and no effort was made to ascertain the exceptions (if any) of the policy.

■ The court should have heard the evidence concerning title insurance upon the merits of plaintiff's claim and the defenses thereto, as well as upon the entire counterclaim, including the claim for specific performance. We would so consider it, but the evidence is lacking in certain essentials. Plaintiff's counsel made an offer to complete the purchase and sale by a modification of the original contract, if defendant would "furnish" a company that would write title insurance. This was an offer to effect a novation. The decisive question is whether defendant accepted that offer; the offer required an act

of acceptance, not merely a promise. Dagg-wett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S.W.2d 1036; 66 C.J.S. Novation §§ 4b, 5; Dorsey v. Strand, 21 Wash.2d 217; 150 P.2d 702, 706; and an offer to modify a contract may be accepted by performance. Durasteel Co. v. Great Lakes Steel Corp. (CA 8), 205 F.2d 438. Here defendant did act. According to the evidence, it applied for and procured a title insurance policy; the objection by reason of the fact that the policy was issued in the name of the School District is a mere technicality; if a title insurance company is willing to insure one owner it would certainly be willing to insure the succeeding owner upon the execution and delivery of a sufficient deed. The basic question for decision, *which was never reached,* was whether title insurance was offered which validly insured against the alleged defect arising from a possibility of reversion created by Burnam's deed, or whether that risk was *excepted.* Counsel attempt to go outside the record, saying that it was not excepted,—but these statements do not supply a lack of evidence. If defendant produced and tendered within an appropriate time an insurer shown to be willing to insure the title generally, including coverage of the supposed defect (by an issued title policy or other acceptable proof), then a novation was completed, and plaintiff should have been required to perform. If any fee was or would be required in order to transfer the title insurance to plaintiff's name, the expense may be taxed against the defendant, if deemed proper. The evidence on this vital feature of the case was insufficient; perhaps this was partly due to the trial rulings limiting the evidence and the purpose for which it would be received, but it appears also to have been due in part to a rather marked degree of hostility between counsel which has been apparent throughout the negotiations, the trial, and even here; this has tended to obscure the real issues, and it has certainly not benefited the litigants or the courts.

The trial court refused plaintiff any recovery and ordered specific performance under the counterclaim. We cannot affirm the judgment on this evidence, for we disagree with the conclusion of the trial court that the quiet title decree was final and conclusive when rendered, and the evidence was insufficiently developed for a determination of the title insurance issue. We therefore reverse the judgment, but we remand the case for retrial in order that the issue concerning title insurance may be properly developed, as indicated in this opinion. This we may do within our discretion.

Reversed and remanded. It is so ordered.

All of the Judges concur.