Paul D. QUINN, Charles A. Quinn, Agnes Quinn Kennedy, and Mrs. Carl Laurent, Respondents,

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY CO., Appellant.**

No. 53431.

Supreme Court of Missouri, En Banc.

April 14, 1969.

H. K. Wangelin, Wangelin & Friedewald, Poplar Bluff, for respondents.

James M. Reeves, Ward & Reeves, Caruthersville, for appellant.

Ernest D. Grinnell, Jr., Wm. Bruce Kopper, St. Louis, of counsel, for appellant.

WELBORN, Commissioner.

The question in this case, arising by way of an action to quiet title, is whether, upon the St. Louis-San Francisco Railway's ceasing operations through Poplar Bluff in 1965, the land on which its depot stood reverted to the heirs of the grantor of the land, by virtue of a "reverter" clause in a 1901 deed, or became the property of the Frisco by reason of its ownership of adjacent land. The trial court found in favor of the heirs of the grantor and also awarded them $2,145 for loss of rent and profits. The railroad appeals.

This land was conveyed by a deed, acknowledged April 9, 1901, reading, in part as follows:

"Deed for Right-of-Way

"Be It Known, that we the undersigned, Luke F. Quinn and Mary P. Quinn, his wife, of the City of Poplar Bluff, Missouri, for and in consideration of the sum of one dollar as in hand paid, and divers other good and valuable considerations to us moving, have granted, bargained and sold, and do by these presents grant, bargain and sell unto the Southern Missouri and Arkan-

sas Railroad Company the following parcels of land in the City of Poplar Bluff, County of Butler, State of Missouri, to-wit:

(Description omitted)

"To Have and To Hold unto said Railway Company forever, subject however, to the following conditions:

"1st. The property herein granted is granted for the use as a railway and on condition that the grantor be released from his subscription of $500.00 in freights.

"2nd. The said Railway Company shall erect and maintain on the south end of the above Lot 77–A a suitable station building of modern architectural design, similar to the railway station of the said Company in Cape Girardeau, Missouri.

"3rd. The said Company shall, at its own expense, remove from the land herein conveyed, the buildings located thereon at the present time, to such other ground in the neighborhood as the said L. F. Quinn shall select.

"4th. That whenever the property herein conveyed shall cease to be utilized for the purposes hereinabove set *our*, for a period of six months, then this deed shall be void and the land herein granted shall revert to and become the property of the said L. F. Quinn.

"In Witness Whereof, * * *."

By deeds of April 30, 1901 and March 31, 1909, Quinn and wife conveyed to defendant's predecessors in title, the land adjacent to the tracts in question and lying to the west. The Frisco eventually became the owner of the title which the grantee in each of the three deeds had obtained.

A depot building was constructed on the land here in question and was used as such until September, 1965, when the Frisco ceased operating in Poplar Bluff. The depot building was subsequently rented for a time to the United States Post Office Department. No question is here raised as to the fact of abandonment by the railroad.

This suit was filed October 28, 1966, by the heirs at law of Quinn, seeking to quiet title in themselves against the claim of Frisco on the grounds that, by reason of the termination of the use of the property for railroad purposes, the land reverted to them by virtue of the "reverter" clause in the Quinn 1901 deed. The railroad filed an answer and counterclaim, asserting that title to the land vested in it as the owner in fee of the adjacent property on the west, the east side of the tract being bounded by a public street.

The case was submitted on a stipulation of facts, setting out essentially the above matters and the trial court found for plaintiffs. The railroad appealed.

■ By reason of various considerations, including the early tendency to view with disfavor corporate ownership of real estate (1 Elliott on Railroads, 3rd ed., § 452, p. 686), the turbulent early history of railroad development (Coates & Hopkins Realty Co. v. Kansas City T. Ry. Co., 328 Mo. 1118, 43 S.W.2d 817, 821), and the peculiar physical characteristics of railroad property, particularly the right of way (Brown v. Weare, 348 Mo. 135, 152 S.W. 2d 649, 656, 136 A.L.R. 286), a definite policy has been established in this state which particularly controls the nature and extent of the interest of railroads in real estate. Thus, where the legislative charter of a railroad corporation authorized it to obtain the fee simple title upon condemnation, in Kellogg v. Malin, 50 Mo. 496, the court held that " * * * notwithstanding the language used, nothing more than an easement passed to the road, giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken, * * *." 50 Mo. 500. Such limitation upon the right of a railroad to acquire land by condemnation was incorporated in the Constitution of 1875, Article II, § 21. Constitution of Missouri, 1945, Article I, § 26, V.A.M.S. The 1853

general railroad corporation law limited the right of a railroad to hold land taken on "voluntary grant" to "the purposes of such grant only." Laws of 1853, p. 121, § 28, subpar. 2d, p. 134. Such a limitation was in effect at the time of the deed here in question. § 1035, RSMo 1899, now § 388.210(2), RSMo 1959, V.A.M.S. Some earlier cases gave rise to the question of the right of a railroad company, in any event, to take the fee in land. See Chouteau v. Missouri Pac. R. Co., 122 Mo. 375, 22 S.W. 458, 30 S.W. 299; Allen v. Beasley, 297 Mo. 544, 249 S.W. 387. However, in Coates & Hopkins Realty Co. v. Kansas City T. Ry. Co., supra, the court held that a railroad corporation might, " * * * upon a valuable consideration, by agreement and purchase and by a deed in fee, take the fee in land so purchased * * *." 43 S.W.2d l. c. 823. The court expressly noted the exception of "voluntary grants, lands condemned for railroad tracks, and conveyances of rights of way only to railroad corporations." Idem.

In State ex rel. State Highway Commission v. Griffith, 342 Mo. 229, 114 S.W. 2d 976, the court concluded "that a conveyance of land to a railroad company for right of way purposes only, irrespective of the consideration, passes only an easement, * * * *." 114 S.W.2d 980. Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 136 A.L.R. 286, held the same rule applicable to a conveyance to a railroad for station grounds. The court stated:

"It reasonably follows from our statutory scheme that no different theory exists as to station grounds from the one applicable to a right of way where such purposes are set out in the deed or where limitations on the use of the grant are imposed by the deed. Therefore, from the express terms of the deed under consideration, besides from the fact that it was a voluntary grant, we find merely an easement was granted in the station grounds." 152 S.W.2d 654 [12, 13].

■ This conclusion is here controlling. The deed clearly limited the use of the property to railroad purposes, and specifically for a depot. Such limitation caused the deed to convey only an easement to the railroad. The fee remained in Quinn as the owner of the adjacent property. His subsequent conveyance of the adjacent property carried with it his interest in the property over which the easement had been granted. Brown v. Weare, supra. Respondents do not contest the railroad's position that the deeds to the adjacent tracts conveyed fee simple title to the grantee.

There are distinctions between the deed here and that in Brown v. Weare, but we do not find them significant. The primary difference, of course, is the "reverter" clause, present in Quinn's deed but not in Weare's. However, in view of the fact that the conveyance was for railroad purposes, the clause in the Quinn deed did nothing more than fix the period of nonuser which would cause the interest of the railroad in the property to terminate. State ex rel. State Highway Comm. v. Jacob, et al., Mo.Sup., 260 S.W.2d 22, 24 [1].

The respondents have sought to defend the trial court's judgment solely on the grounds that the conveyance by Quinn was not a "voluntary grant," within the meaning of § 388.210(2), supra. However, this position overlooks the fact that, under Brown v. Weare, the expression or limitation of the use to which the property was to be put is likewise a decisive factor.

By reason of the policy considerations peculiarly applicable in transfers of interest in real estate to railroad corporations, cases relied upon by respondents involving deeds to other entities, such as school districts (Board v. Nevada School District, 363 Mo. 328, 251 S.W.2d 20, and Nowlin v. Columbia School District, Mo.Sup., 401 S. W.2d 394) and banking corporations (White v. Kentling, 345 Mo. 526, 134 S.W. 2d 39), are not controlling on the nature and extent of the estate created by the deed here in question.

The judgment is reversed and the cause remanded with directions to enter judgment quieting title in the appellant as against the claim of the respondents.

PER CURIAM:

The foregoing opinion by WELBORN, C., written in Div. I, is adopted as the opinion of the Court en Banc. The judgment is reversed and remanded, with directions.

All concur.

HENLEY, J., concurs in separate concurring opinion filed.

HENLEY, Judge (concurring).

While I dissented from the majority opinion in Division, I have concluded, since transfer of the case to Banc, to concur for the following reasons. The subsequent conveyance by Quinn of the adjacent property raises a "presumption of grant" of the underlying fee in the depot property in the absence of words in that conveyance showing a different intention. Grant v. Moon, 128 Mo. 43, 30 S.W. 328; Snoddy v. Bolen, et al., 122 Mo. 479, 25 S.W. 932, 24 L.R.A. 507; Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 654–655 [14–15], 136 A.L.R. 286. See also 9 University of Kansas City Law Review 113. The attempt by Quinn in the fourth "condition" of his deed of April 9, 1901, to cause the "land" to "revert" to him upon abandonment of the easement was ineffective as against Quinn's subsequent deeds conveying the adjoining land since the latter expressed no intent to retain the underlying fee in the easement property. See Snoddy v. Bolen, et al., supra, 25 S.W. l.c. 934, which I consider analogous and controlling as to the effect of the fourth "condition." Snoddy involved conflicting claims to minerals under half of a public street. In that case plaintiff's remote grantor by an instrument dedicating the street to public use retained the fee to the minerals in place thereunder and thereafter conveyed lots adjoining one side of the street to defendants' remote grantors by deeds which made no mention of the mineral rights retained. The court affirmed a judgment for defendants, holding that since the deeds to the lots expressed no contrary intention by exception or reservation the minerals passed to defendants who had, by deeds describing the lots only, acquired the fee to the center of the street. See also Prewitt, et al. v. Whittaker, et al., Mo., 432 S.W.2d 240, 243 et seq., [2–3].