John F. WEEKS et al., Plaintiffs-
Appellants,

v.

MISSOURI PACIFIC RAILROAD COM-
PANY, Defendant-Respondent,

and

Lewis E. Ollison et al., Intervenors-
Respondents.

No. 57161.

Supreme Court of Missouri,
Division No. 1.

Feb. 11, 1974.

Bernard A. Reinert, St. Louis, for plaintiffs-appellants, John F. Weeks, and others; Kenney, Leritz & Reinert, St. Louis, of counsel.

Hendren & Andrae by Kelly Pool, Jefferson City, for defendant-respondent Missouri Pacific Railroad Co.

Kay & Quigley, Robert J. Quigley, Eldon, for intervenors-respondents, Lewis E. Ollison, Bonnie Sue Ollison, Elmo J. Schulte and Cletice F. Schulte, his wife, and Ralph Reed.

BARDGETT, Presiding Judge.

This case directly involves title to certain real estate in the City of Eldon, Miller County, Missouri, and the appeal was filed prior to January 1, 1972. This court has jurisdiction. Mo.Const., Art. V, Sec. 31, V.A.M.S. Plaintiffs below are the appellants. Defendant Missouri Pacific Railroad and intervenors, Ollisons, Schultes, and Reed, below are respondents. The parties will be referred to as they appeared in the circuit court.

The real estate involved is land formerly used by the railroad as trackage right of way, stock pens, spur track, a depot, and other uses directly connected with the operation of a railroad through Eldon, Mo.

The streets of Eldon run north-south and east-west. The railroad runs diagonally through Eldon northeast-southwest, but for simplicity will be considered as running east-west.

The trackage right of way is generally 100 feet wide. Beginning at Mill street on the east and extending to Broadway on the west, the railroad property is 200 feet wide, the additional 100 feet lying on the north side of and contiguous with the general 100 foot wide trackage right of way. The 200 foot wide strip within this six-block section will be referred to as the northern 100 foot strip and the southern 100 foot strip.

Plaintiffs, as the descendants of George F. Weeks and Elmira Weeks, his wife, claim title to the northern 100 foot strip on the grounds that plaintiffs' ancestor Weeks conveyed a fee estate to defendant's predecessor railroad with a provision for the reversion of the property to grantor Weeks in the event the railroad did not construct and continue to maintain a railroad depot in Eldon.

Plaintiffs claim title to the northern one-half of the southern 100 foot strip on the grounds that they are abutting landowners to an abandoned railroad right of way. Plaintiffs own no land abutting on the 200 foot wide strip from Mill street to Broadway.

Defendant Missouri Pacific Railroad Co. is the successor to the Jefferson City Lebanon & Southwestern Railroad Company (J.C.L. & S.W.). Defendant does not claim to have owned the fee in the northern 100 foot strip, but, in this case, denies title in plaintiffs.

Intervenors Ollisons and Reed, respectively, own parcels of land abutting a portion of the north side of the northern 100 foot strip. Intervenors Schultes own a parcel of land abutting on a portion of the south side of the southern 100 foot strip.

Intervenors deny title in plaintiffs and as abutting owners to an abandoned railroad right of way claim ownership of that portion of the 200 foot strip upon which

their property abuts to a point one-half (100 feet) of the way across the 200 foot strip.

The trial court found generally for defendant and against plaintiffs, thus denying title to plaintiffs. The trial court also sustained intervenors' claim of ownership to one-half of the 200 foot strip upon which intervenors' land abuts.

Plaintiffs alone have appealed and on this appeal assert two points which are:

"I. The trial court erred in refusing to award to the Weeks the reversionary interest expressly reserved to them in the Quit Claim Deed of April 15, 1882.

"II. The application of the statutory scheme embodied in Sec. 26, Art. 1, Mo. Const.1945 (Sec. 21, Art. 2, Mo.Const., 1875 and V.A.M.S. 388.210(2) (765(2) R. S.Mo.1879) to defeat the Weeks' reversionary interest in the Quit Claim Deed in suit violates the Federal and State Constitutional provisions prohibiting the State from making laws which impair the obligations of contract, Art. I, Sec. 10 U.S. Const.; Art. I, Sec. 13. Mo.Const.1945, deprives the Weeks of substantive due process of law and equal protection of the law, in violation of Amends. V and XIV, U.S.Const. and Art. 1, Sec. 2 of Mo.Const. 1945, and takes private property from the Weeks and gives it to the defendant Railroad without compensation in violation of Art. 1, Sec. 28, Mo.Const., 1945."

The quitclaim deed upon which plaintiffs base their reversionary claim to the northern 100 foot strip was executed by George R. Weeks and Elmira F. Weeks, his wife, and Silas Brickey and Ollevia Brickey, his wife, grantors, to the J.C.L. & S.W. on April 15, 1882, and filed for record on May 11, 1882.

This quitclaim deed describes the northern strip by metes and bounds and consists of a parcel of property 100 feet wide (N-S) and 2210 feet long (E-W). The deed declares that the property is transferred to the railroad "in consideration of the erection and maintenance of a Depot in the Town of Eldon," and also contains the following recitation, "Said land is conveyed for the use of said Railway for Railroad purposes, and in case said grantee or its assigns fail or neglect to erect and maintain a Depot in the present Town of Eldon then this grant shall be forfeited and the above property revert to above grantors."

The railroad did erect and maintain a depot or depots in Eldon until December 1966 when it was razed and not replaced. The railroad has removed its tracks and is no longer engaged in the business of operating a railroad in Eldon. In short, defendant has abandoned the use of the 200 foot strip for railroad purposes.

Plaintiffs contend that Silas Brickey and his wife had no interest in the property when the quitclaim deed was executed and that whatever interest George R. Weeks and his wife lacked at that time was subsequently acquired so that plaintiffs are the sole beneficiaries of the reversionary interest to the property. Intervenors contend that George R. Weeks and his wife had no interest in the described property at the time the deed was executed or subsequently divested themselves of whatever interest they had in the property and therefore plaintiffs have no reversionary rights to the property.

The abstract of title to the property in question contains numerous deeds executed during the 1880's, as well as deeds filed to correct errors in former deeds; a circuit court judgment correcting errors in deeds; and an affidavit filed for the purpose of correcting errors.

The resolution of the points on this appeal calls for a decision with respect to the legal effect, if any, of the alleged reversionary clause in the quitclaim deed and this decision can be made without attempting to untangle the conflicting deeds, correcting deeds, and affidavits appearing in the abstract of title.

If the quitclaim deed conveyed only an easement for railroad purposes, then the title to the easement vested in the abutting landowners upon abandonment by the railroad and the reversionary clause does not operate to revest title in the grantors.

All parties agree that by other conveyances the railroad acquired only a right of way easement in the southern 100 foot strip.

If the quitclaim deed for the northern 100 foot strip was a voluntary grant for railroad purposes, then the interest acquired by the railroad was an easement only. The fee remained in the grantors, subject to the easement, and in grantors' successors in title to the land abutting the easement and, upon the abandonment of the easement, the original owners, or their grantees, thereafter held the same freed from the burden of the easement. Bray v. St. Louis-San Francisco Railway Co., 310 S.W.2d 822 (Mo.1958).

In Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649 (Mo.1941), the deed recited consideration of one dollar and stated that the property was conveyed for station grounds and expressly limited the use of the property to railroad purposes. A depot was erected and maintained for about 50 years and then abandoned. This court held that the grant was a voluntary one and conveyed only an easement to the railroad, saying at 654, "Accordingly, we hold that the deed from Weare to the railroad company was but a voluntary grant and comes within the purview of the statute. The statute makes no distinction according to the exact railroad purpose for which the land is to be used but in effect requires only that the land be used for railroad purposes. Nor do we see any good reason for making any distinction because the property is used for station purposes rather than for a right of way. In the case at bar the station grounds were merely a wider place on the right of way. Instead of a strip 100 feet wide like the right of way the railroad company received a strip 350 feet wide for a distance along the right of way of some thousand feet. The tracks ran through the length of this plot. It is our conclusion that only an easement may be and was acquired by voluntary grant for station grounds, the same as for a right of way."

In Quinn v. St. Louis-San Francisco Railway Co., 439 S.W.2d 533 (Mo. banc 1969), the deed to the railroad recited that the land was to be used as a railway; that the railroad was to erect and maintain a depot on said land, and that whenever the property ceased to be used for the purposes set forth for a six-month period, "then this deed shall be void and the land herein granted shall revert to and become the property of the said L. F. Quinn." The court held this to be a voluntary grant conveying an easement only, stating at 535:

"This conclusion is here controlling. The deed clearly limited the use of the property to railroad purposes, and specifically for a depot. Such limitation caused the deed to convey only an easement to the railroad. The fee remained in Quinn as the owner of the adjacent property. His subsequent conveyance of the adjacent property carried with it his interest in the property over which the easement had been granted. Brown v. Weare, supra. Respondents do not contest the railroad's position that the deeds to the adjacent tracts conveyed fee simple title to the grantee.

"There are distinctions between the deed here and that in Brown v. Weare, but we do not find them significant. The primary difference, of course, is the 'reverter' clause, present in Quinn's deed but not in Weare's. However, in view of the fact that the conveyance was for railroad purposes, the clause in the Quinn deed did nothing more than fix the period of nonuser which would cause the interest of the railroad in the property to terminate. State ex rel. State Highway Comm. v. Jacob et al., Mo.Sup., 260 S.W.2d 22, 24(1).

"The respondents have sought to defend the trial court's judgment solely on the grounds that the conveyance by Quinn was not a 'voluntary grant,' within the meaning of Sec. 388.210(2), supra. However, this position overlooks the fact that, under Brown v. Weare, the expression or limitation of the use to which the property was to be put is likewise a decisive factor."

Thus, between Brown v. Weare, supra, and Quinn v. Frisco, supra, the court had before it deeds similar to the one here in question which limited the use of the property to railroad purposes; required a depot to be erected and maintained; and provided for the land to revert to the grantor if the specified use was abandoned. Both *Brown* and *Quinn* recognize that an express limitation in the deed on the use to which the property can be put is a decisive factor in classifying the deed as a voluntary grant. Also, neither case found the use of the property as a railroad and the construction and maintenance of a depot to be such "consideration" whereby the conveyance was other than a voluntary grant of an easement, and the inclusion of a reverter clause in the *Quinn* deed did not operate to cause the deed to convey a fee interest to the railroad with a right of reverter in the grantor.

These cases, Brown v. Weare, and Quinn v. Frisco, supra, are controlling of the instant case. Any remaining doubts about whether the instant quitclaim deed was a voluntary grant or not must be resolved in favor of a voluntary grant when consideration is given to the following facts.

On March 15, 1882, about two months prior to the recording of the quitclaim deed, George Weeks, as proprietor of the Town of Eldon, signed and filed for record a plat of the Town of Eldon in which he "acknowledged that he made out, signed and filed said plat for the uses and purposes required by law." The plat shows the lots and blocks, streets, and the railroad right of way as it passes through Eldon. The space on the plat, containing the

northern 150 feet of the 200 foot strip in question here, contains the following inscription, "This space represents Right of Way of Jefferson City Lebanon and S.W. RR. One hundred and fifty feet in width . . . .." Immediately south of the 150 foot strip is another strip 50 feet wide. Together they comprise the 200 foot strip in issue here.

On June 7, 1910, George R. Weeks filed for record an affidavit which is part of the abstract of title to the property in question which is in evidence in this case. The affidavit recites that he, George R. Weeks, and four other named persons, composed the Eldon Town Company; that the Eldon Town Company "was formed for the purpose of raising funds to secure the construction of a Depot at Eldon and certain right of way for the railway known as the Jefferson City Lebanon & Southwestern Railway Company and all the lands which said company purchased and which were given to said company by donation for such purpose were conveyed to this affiant and the title thereto held by him for said company; that all of the lands so conveyed to him as aforesaid were afterwards surveyed and platted by him as the town of Eldon . . . . ."

Thus it is seen that prior to the execution of the quitclaim deed in question George R. Weeks had already dedicated the property in question to the use of a railroad by the recording of the town plat as proprietor thereof. Kansas City & N. Connecting R. Co. v. Baker, 183 Mo. 312, 82 S.W. 85 (1904).

In so doing George R. Weeks carried out the purpose for which the property was acquired by the Eldon Town Company and placed in the name of George R. Weeks as trustee. That purpose was declared by George R. Weeks in his affidavit of June 7, 1910, to be the raising of funds to secure the construction of a depot at Eldon and the acquisition of certain rights of way for the J.C.L. & S.W. Railway Co. Apparently some of the land was donated to and some was purchased by the Eldon

Town Company. In any event, the affidavit of June 7, 1910, makes clear that, as between the Eldon Town Co., acting through George R. Weeks, and the railroad, the property was donated to the railroad for railroad purposes.

The court holds that the interest acquired by the railroad, whether by dedication by plat of the Town of Eldon or by the quitclaim deed in question, constituted an easement for railroad purposes. The underlying fee in the easement passed to the subsequent grantees of the property abutting the easement. Quinn v. Frisco, supra.

Plaintiffs principally rely upon Bagby v. M.K.T.R. Co., 351 Mo. 79, 171 S.W.2d 673 (Mo.banc 1943) in support of their contention that the quitclaim deed here involved was not a voluntary grant but did convey the fee to the railroad with a reversion in the grantor. *Bagby* distinguished Brown v. Weare, supra, on the basis that in Bagby the property in question was not alleged to have been abandoned by the railroad whereas in Brown v. Weare the property was abandoned. The same distinction applies here as the property in question has been abandoned by defendant railroad.

■ Plaintiffs' second point on appeal consists of a constitutional challenge to the alleged application of the statutory scheme embodied in Mo.Const., Art. I, Sec. 26, V.A.M.S., and Sec. 388.210(2), RSMo 1969, V.A.M.S., to defeat their reversionary interest. Plaintiffs contend that such a statutory scheme as herein applied violates the impairment of contracts, the due process and the equal protection provisions of the United States and Missouri Constitutions.

Section 388.210(2), RSMo 1969, V.A.M.S., states that land held by railroads under voluntary grant shall be used for railroad purposes only. Section 765(2), RSMo 1879, which is identical to Sec. 388.210(2), supra, was in effect at the time of the execution of the instant deed. Since it is this court's holding that the instant deed constituted a voluntary grant, then it is consist-

ent with the organic law that governed the Weeks' deed and does not alter the law so as to impair the obligation of the contract contained in the deed in violation of U.S. Const., Art. I, Sec. 10, and Mo.Const., Art. I, Sec. 13, V.A.M.S. Also the determination that this was a voluntary grant precludes the application of the nonconsensual taking provision contained in Mo. Const., Art. I, Sec. 26, V.A.M.S. Any contest of this court's ruling as to the voluntary grant would certainly require a construction of the statutory term as it appears in Sec. 388.210(2) but not necessarily a determination of the constitutionality of the statute itself. Plaintiffs do not challenge the constitutionality of Sec. 388.210 (2).

■ Plaintiffs make the further constitutional argument that to enlarge the statutory scheme comprised of Sec. 388.210(2) and Mo.Const., Art. I, Sec. 26, V.A.M.S. so as to include the instant deed would effectively violate their due process rights since they would be deprived of their contractual right to reversion without due process, as well as their equal protection rights to be treated the same as other vendors of real estate. This court's decision that the instant deed constituted a voluntary grant does not represent an enlargement of the statutory scheme of which Sec. 388.210(2) is a part but rather is a construction of the meaning of that statute in keeping with *Quinn* and *Brown*. Thus plaintiffs' due process and equal protection rights have not been violated.

The judgment of the trial court that the plaintiffs have no interest in the contested property is affirmed. Also that part of the trial court's judgment which attributes ownership in *some* portions of the easement to the intervenors, as abutting landowners, is affirmed. However, in describing the actual parcels of the easement which are to be awarded to the intervenors, particularly the east-west boundary lines of the parcels as they cross the easement, the trial court apparently utilized no consistent pattern. Some of the boundary

lines intersect the center line of the railroad easement at right angles and some do not. Persons owning land abutting the railroad easement who were not intervenors in this action may be significantly affected by the east-west boundary lines of the parcels awarded to the intervenors. Consequently that portion of the trial court's judgment which describes the property awarded to the intervenors is remanded for further proceedings in which landowners whose property abuts the railroad's 200 foot wide easement and who will be affected by the court's award to the intervenors may be made parties or be permitted to intervene. These proceedings will serve to accurately establish the boundaries of the parcels which the intervenors and other affected abutting landowners will take as a result of the railroad abandoning its easement.

The judgment is hereby affirmed and remanded with directions.

All of the Judges concur.